**R. L. RAMSEY**

v.

**L. P. HOPKINS et al.**

**Civ. A. No. 70-765 NE.**

United States District Court,
N. D. Alabama,
Northeastern Division.

Dec. 21, 1970.

U. W. Clemon and Adams, Baker & Clemon, Birmingham, Ala., for plaintiff.

Gene H. Lentz and Brewer & Lentz, Decatur, Ala., for defendants.

## MEMORANDUM OF DECISION

POINTER, District Judge.

This matter came on for hearing on November 16, 1970, on the complaint of R. L. Ramsey, plaintiff, that his rights under the Fifth, Thirteenth and Fourteenth Amendments to the Constitution and under 42 U.S.C. §§ 1981, 1983, had been violated in connection with the termination of his employment as a high school teacher in the Lawrence County school system. Named as defendants are the members of the County Board of Education and the County Superintendent. Consideration of plaintiff's motion for preliminary injunction was pretermitted by reason of the early hearing on the merits of the case.[1]

Appearing for the plaintiff were Oscar W. Adams and U. W. Clemon, Attorneys, Birmingham; and for the defendants, Gene H. Lentz, Attorney, Decatur.

## FINDINGS OF FACT

In July, 1970, while being interviewed by Lewis Watkins, principal of Lawrence County High School, about a teaching position for the upcoming school year, plaintiff, R. L. Ramsey, was informed of Watkins' rule against "male teachers wearing mustaches". Ramsey, whose two previous years in the school system had been at another high school which had no such rule,[2] did not at the time raise any question about the mustache rule, nor, when specifically pressed by Watkins, indicate that keeping his mustache was a matter of any great importance to him, culturally or otherwise. Ramsey, a Negro, had a mustache that apparently fell somewhere between a short, pencil-lined one and a heavy, bushy one.

In due course—for Watkins' function was to advise the county superintendent, who in turn would make recommenda-

1. The complaint was filed on October 9th, the answer filed on November 2nd, and the trial held on November 16th.

2. With only two years Ramsey did not have "continuing service status" under the teacher tenure laws. Ala.Code, tit. 52, § 352. However, no notice of nonemployment or declining the employment had been given under § 361(2) of such title, with the result that he was entitled to reemployment for the 1970-71 school year. Then on June 12, 1970, this Court (CA66-645) approved a desegregation plan for the system which reduced the number of high school facilities, eliminating the one at which Ramsey had been teaching. The order contained provisions regarding demotion/dismissal of teachers as required by Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1969), including use of "objective and reasonable non-discriminatory standards."

tion to the county board—Ramsey was notified to report to the preschool teachers' institute. This, which was scheduled for the day before opening of school, Ramsey attended, receiving a card showing him as a teacher at Lawrence County High School. Neither Watkins nor Ramsey broached the subject of the mustache at the institute although they apparently saw each other there and Ramsey's mustache was still very much evident.

On showing up at school the next day Ramsey was reminded by Watkins of his rule against mustaches and, when he arrived again on the following day still wearing his mustache, he was asked by the principal to talk to the county superintendent, Silas Cross. Cross admonished Ramsey as to the desirability of co-operating with the principal of a school and advised him that he should remove his mustache if he wanted to continue teaching at that school. Ramsey returned to the classroom for the remainder of the day, a Friday, promising to consider the entire matter over the weekend. As promised, he called the superintendent by telephone during the weekend and, after being told that he could not obtain a leave of absence from the board to attend a special course at Alabama A & M, stated that he would resign from the Lawrence County system. Cross then called Watkins and told him to get another teacher for Ramsey's classes.

When he went by the superintendent's office the next week, however, Ramsey first put off signing a written resignation and subsequently stated that he had changed his mind altogether and did not desire to resign. Cross responded that the matter would have to be taken up by the Board, advised him of the time and of his right to be heard, and permitted him to resume his teaching duties pending a decision by the Board.

Ramsey showed up at the Board meeting, accompanied by a witness; but, due to the press of other business, several hours passed before his case was taken up by the Board. By that time Ramsey and his friend had left. Superintendent Cross explained the matter to the Board and Ramsey's employment was thereupon terminated, with the following reasons being given in the Board's minutes: resignation, insubordination, and failure to co-operate.

On the following day Cross advised Watkins and Ramsey of the Board's decision * * * but then made several calls to other schools in the system (none of which had a rule prohibiting mustaches) to see if any had a vacancy which Ramsey might fill. No such position was found, and Ramsey has since been attending a special program at Alabama A & M this semester. His position at Lawrence County High School has been filled by a Negro woman. No action has been taken—and apparently none is anticipated—with respect to the wearing of a mustache by another teacher at Lawrence County High School—indeed, it did not appear that this other teacher (also a Negro) has ever been asked to remove his mustache, Watkins' explanation being that it was better trimmed and less noticeable than Ramsey's.

### CONCLUSIONS OF LAW AND OPINION

■■ Plaintiff's claim of racial discrimination is not convincing. Such an issue depends on the particular facts presented. Brooks v. School District of Moberly, 267 F.2d 733 (8th Cir. 1959). Here, neither in the establishment nor in the enforcement of this proscription against mustaches has a case of *racial* discrimination been shown; this conclusion is certainly supported, though not compelled, by the fact that the person who took Ramsey's position and the teacher who has been permitted to continue wearing a mustache are both of the same race as Ramsey's. Nor, in the opinion of this Court, has the wearing of a mustache been so appropriated as a cultural symbol by members of the Negro race as to make its suppression either an automatic badge of racial prejudice or a necessary abridgement of first

amendment rights. *But cf.* Braxton v. Board of Public Instruction, 303 F.Supp. 958 (M.D.Fla.1969). The plaintiff has failed to meet his burden of proof on this issue. Glover v. Daniel, 434 F.2d 617 (5th Cir. 1970).

■ As Fourteenth Amendment guarantees are available to persons of all races, it is of course obvious that Ramsey's rights to due process and equal protection are not limited to those which he possesses *qua* a Negro. So it is here, that Ramsey, as an employee of a state agency, has (without regard to race or color) certain constitutional protections against exclusion from that employment on patently arbitrary or discriminatory grounds. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L. Ed. 216 (1952); Cafeteria and Restaurant Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

■ One aspect of the inquiry is directed towards the procedure by which Ramsey's case was heard before the Board of Education. The formal steps required by Alabama laws for discharge of a tenured teacher were not followed;[3] however, he was informed of the hearing (albeit only a few days in advance, and that orally); he was made aware of the nature of the hearing and of the complaints against him—indeed, to the point that he was sufficiently impressed with the gravity of the occasion as to spend several hours, along with a potential witness, at the Board Meeting waiting to be heard. It does not appear that he would have been denied the opportunity of presenting his side of the dispute had he been willing to wait until his turn arrived.[4] *Cf.* Lucia v. Duggan, 303 F.Supp. 112 (Mass.D.C.1969). The Court is unwilling to say that, under these circumstances, the procedure by which the Board heard Ramsey's case in and of itself resulted in a denial of due process or equal protection of the law.

But there is another aspect of this case—one which looks at the reasons why Ramsey's employment was terminated. The first reason assigned by the Board, that Ramsey resigned, is not substantiated by the facts.[5] The other reasons given by the Board in the minutes, that of "insubordination" and "failure to co-operate", also require scrutiny. These are but labels for the real problem: Ramsey's failure to shave his mustache in compliance with Watkins' rule. It is on this level (and not upon the language selected for the Board's minutes) that justification for Ramsey's discharge must be measured. It is likewise true that, by electing to "back up" Watkins' in his insistence that his rule be adhered to, the Board has for practical purposes adopted the rule as its own.[6]

Just what is the rule being enforced? This question is particularly significant in view of the undisputed testimony that the only other teacher who has been wearing a mustache has not even been asked to shave his. It is obvious either that the rule is subject to secret exceptions or that, though an absolute proscription, it is not uniformly enforced. Just which defect is applicable is un-

---

3. The Fourteenth Amendment does not, of course, prevent all classifications. Special protections for tenured teachers (after serving prescribed employment periods and meeting other standards) appear to be reasonable and appropriate.

4. There was no intimation that the lateness of the hour at which Ramsey's case was finally heard by the Board was due to any subterfuge aimed at depriving him of the opportunity to be heard, or was due to any reason other than the press of other business requiring the Board's prior attention.

5. It is clear that what Ramsey did was to declare that he was going to resign, and then not go through with his announced intention. All understood that his resignation was not to be effective until he signed a statement to that effect —which he never did.

6. Loyalty is a commendable virtue, but the question is often loyalty to whom. In the present case the Board's support of a principal who establishes a rule runs into conflict with a responsibility towards teachers to see that they are not oppressed by arbitrary and unreasonable regulations.

clear, however, for the reason that the rule is unwritten and happens to have as its author and enforcer one and the same person.

■■ This is indeed a gross example of a rule based upon personal taste of an administrative official which is not a permissible base upon which to build rules for the organization of a public institution. See Zachry v. Brown, 299 F. Supp. 1360 (N.D.Ala.1967). There must be some showing of justification for the rule related to the legitimate purposes of the institution. Griffin v. Tatum, 425 F.2d 201 (5th Cir. 1970); Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969). Here there is not *the slightest of argument* or evidence offered to support the proscription against mustaches—no indication that mustaches had caused, or were likely to cause, any disruption or disturbance; no indication of any health or sanitation problem; no indication of difficulties of any sort with mustaches. Indeed, the Board's own valuation of the significance of mustaches is demonstrated by the fact that no such proscription has been suggested by it for the other schools under its administration and charge, and by the fact that its Superintendent on the day after Ramsey was discharged was trying to find him a job at one of the other schools in the system.

■■ Nor can the Board duck its responsibility in such matters by merely "going along with" its principals and whatever rules they may establish for their schools. When complaint reaches the Board over such rules or their enforcement, the Board, as here, will have to take a position—and be prepared to accept the consequences of its decision. Moreover, Boards which, like the Lawrence County Board, are under the direc-

tion of a decree fashioned under the *Singleton* [7] decision are under an obligation to establish "objective and reasonable non-discriminatory standards" for use in selecting which teachers shall be dismissed or demoted. While such standards are required initially to govern the reduction in teaching positions caused by conversion to a unitary school system, it is apparent that they would be rendered meaningless if local principals were then free to utilize non-objective, unreasonable and discriminatory standards in firing teachers. In short, the Board has a responsibility to initiate inquiry into any local rules which may be the basis for discharge of the teachers and to determine whether such rules satisfy the requirements of *Singleton*.

■ The plaintiff has been subjected to an arbitrary, unreasonable and capricious regulation, one which violates his right to due process and equal protection of the law. He is entitled to relief. Under the circumstances, however —particularly in view of the difficulties which would be caused to students and to the other teacher—it is not appropriate that he be restored to a teaching position in the middle of this semester. Nor, when the Board has had to employ another teacher to handle his classes and when he has been attending a special program at Alabama A & M this semester to further his education and training, would it be appropriate to award him back pay or other monetary damages.[8] The appropriate relief, in the opinion of the Court, is that the plaintiff be offered another teaching position in a high school in the Lawrence County school system commencing with the semester which begins in January, 1971. Whether that position be at Lawrence County High School or at another high school in the system shall be left to the Board of Education; but in any event Watkins' rule against mus-

7. Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1969).

8. His failure to object to the rule when first interviewed, while not having the effect of incorporating an unconstitutional rule into his contract, is of some significance in determining what relief should be granted.

taches at Lawrence County High School shall not be enforced against Ramsey or other teachers. A judgment will be entered to effect this decision.