Judith GURMANKIN, on behalf of herself and all other persons similarly situated, Appellant,

v.

Matthew COSTANZO, Superintendent of the School District of Philadelphia; Murray Bookbinder, Executive Director of Personnel and Labor Relations; Martin K. Ferrier, Director of Professional Personnel; and Board of Education of the School District of Philadelphia.

No. 80–1449.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) May 29, 1980.

Decided June 30, 1980.

Thomas B. Rutter, Philadelphia, Pa., for appellant, Judith Gurmankin.

Jonathan M. Stein, Community Legal Services, Inc., Philadelphia, Pa., for appellant Class Only.

Eugene F. Brazil, Gen. Counsel, Robert T. Lear, Asst. Counsel, School Dist. of Philadelphia, Philadelphia, Pa., for appellees.

Before SEITZ, Chief Judge, and GARTH and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant, Judith Gurmankin, a blind school teacher previously found to have been the subject of unconstitutional employment discrimination, appeals from the trial court's denial of the requested remedies of backpay and tenure.[1] Appellees are

1. An earlier appeal from the order denying backpay was dismissed by the court, *sua sponte*, following argument after we learned that at the time of the entry of that order there remained undecided in the district court plain-tiff's request for certification of a class pursuant to F.R.C.P. 23(b)(2). The order therefore was not a final order within the meaning of 28 U.S.C. § 1291. The order dismissing the appeal was made without prejudice to appellant's

the Board of Education of the School District of Philadelphia, Michael Marcase, Superintendent of the School District of Philadelphia, (who replaced Matthew Costanzo, the original defendant), Murray Bookbinder, Executive Director of Personnel and Labor Relations, and Martin K. Ferrier, Director of Professional Personnel (hereinafter jointly referred to as School District).

The facts in this case are the subject of two prior reported decisions and will be summarized only briefly here. Ms. Gurmankin, who holds a Professional Certificate from the Pennsylvania Department of Education as a teacher of Comprehensive English in Pennsylvania Public Schools, first attempted to obtain employment in the Philadelphia School District in 1969 but was unsuccessful because of the District's medical and personnel policy which excluded blind teachers from teaching sighted students in the public schools. She was classified as having a "chronic or acute physical defect" and was therefore prevented from taking the Philadelphia Teachers Examination until the spring of 1974. Thereafter, she passed the examination but rejected the positions offered to her by the School District because they did not include retroactive seniority to which she claimed she was entitled because of the previous exclusion.

Ms. Gurmankin filed suit in November 1974 pursuant to 42 U.S.C. § 1983 alleging that the School District's policy of preventing blind teachers from teaching sighted students was unconstitutional. In its opinion filed March 31, 1976, the trial court agreed with appellant's claim that denial of the opportunity to demonstrate her competency represented an irrebuttable presumption in violation of the requirements of due process, and ordered that she be offered employment with seniority retroactive to September 1970. *Gurmankin v. Costanzo,* 411 F.Supp. 982 (E.D.Pa.1976). In a supplemental proceeding, the trial court found

that more than ten months after its original order the School District had still failed to offer appellant suitable employment at an "attractive" high school in compliance with the injunction's seniority provision. The court entered a supplemental order on February 8, 1977, amending the injunction to require the School District to provide appellant with a position as an English teacher at one of six designated schools. The original injunction and the supplemental order were both affirmed on appeal to this court. 556 F.2d 184 (3d Cir. 1977).

The relief requested by appellant as part of her original complaint included a demand for backpay which was considered by the trial court in a proceeding subsequent to that in which liability and seniority were determined. The trial court denied backpay for the period sought by appellant, beginning from September 1970, the date the court previously found she would have been offered employment absent discrimination. It granted backpay for the period from March 31, 1976, when the court originally directed the School District to offer appellant employment, through the time when appellant was offered employment in accordance with the court's order of February 8, 1977. The School District has not appealed from the order granting backpay from March 31, 1976. This appeal concerns the denial of backpay for the period from September 1970 until March 31, 1976.

Appellant contends that the failure to award her backpay for the full period in which her constitutional rights were violated constituted an abuse of discretion. Relying primarily on the Title VII cases in which the Supreme Court has held that courts, after a finding of unlawful discrimination, must use their equitable discretion to fashion the most complete relief available, *see, e. g., Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Franks v. Bowman*

right to apply promptly to the district court for a determination and direction under F.R.C.P. 54(b). See Chapter VI A.3, Internal Operating Procedures, United States Court of Appeals for the Third Circuit (1978). Thereafter, the district court entered an order which, inter alia,

denied appellant's motion for backpay for the period prior to March 31, 1976 and denied appellant's request for court-ordered tenure. The court made the requisite determination and certification under F.R.C.P. 54(b), setting forth reasons why appeal was appropriate.

*Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), appellant argues that she has been deprived of a fundamental component of a make whole remedy to which she is entitled.

The School District replies that this case is distinguishable from those cases which require award of backpay as a general rule. The School District argues that the trial court appropriately analyzed the "peculiar facts and circumstances of this case" in exercising its equitable discretion to deny the backpay remedy and that its exercise of that discretion was not "clearly erroneous" and should not be disturbed on appeal.

In its analysis of the appropriate remedy to award in this case, the trial court concluded that equity required the denial of backpay for the period September 1970 through March 31, 1976 for three reasons. First, the court distinguished the Title VII cases as precedent, holding that different policy considerations rendered "impossible mechanical application of Title VII law to this case." The trial court viewed the presumptive use of the backpay remedy in Title VII cases as arising from the national need for an effective deterrent against persistent discrimination Congress has declared impermissible; the use of backpay in those cases "appears justified because employers have been made aware of the illegality of discrimination based upon certain characteristics."

Second, the trial court stated it was not clear whether the "potent remedy" of backpay was required here because only recently had employers become aware of the treatment which the law requires must be accorded persons such as appellant:

> Nor can the Court confidently state that defendants had "notice" that the action they took against Ms. Gurmankin might implicate her constitutional rights; without making "notice" a requirement for imposition of the backpay award, this fact does reflect on the fairness of imposing the backpay award.

Third, the court read the recent Supreme Court decision in *City of Los Angeles v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), as supporting the denial of retroactive relief to Ms. Gurmankin. In the *Manhart* case present and former female employees of the Los Angeles Department of Water and Power successfully challenged the Department's requirement that female employees must make larger contributions to its pension fund than male employees on the ground that such a requirement violated Title VII's prohibition of classifications based on sex. After holding that the contribution differential was unlawful, the district court ordered a refund of all excess contributions. The Supreme Court affirmed the holding on liability but vacated the retroactive relief awarded, expressing concern that a decree that would have required retroactive readjustment of sex-differentiated employee contributions to pension funds would have implicated the financial stability of insurance and pension plans throughout the country entailing assets of more than $400 billion.

In the present case the trial court relied heavily on the *Manhart* decision in denying appellant's requested relief. Although the court recognized that appellant, in common with plaintiffs in Title VII cases, could be made whole only by a backpay award for the entire period in which she was unconstitutionally deprived of a position as a school teacher of sighted children in the Philadelphia School District, the court concluded that "equity requires her to bear this loss."

■ An appellate court reviewing the exercise of discretion of the trial court in granting or denying equitable relief must tread a path between the substitution of its own judgment for that of the trial court, which would eviscerate the authority of the trial court, and the automatic stamp of approval on the decision of the trial court, which would have the converse harm of precluding review of the scope of relief. Meaningful appellate review of the exercise of discretion requires consideration of the basis on which the trial court acted. If the factors considered do not accord with those required by the policy underlying the substantive right or if the weight given to those factors is not consistent with that

necessary to effectuate that policy, then the reviewing tribunal has an obligation to require the exercise of discretion in accordance with "what is right and equitable under the circumstances and the law." *See Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931).

■ In order to effectuate important social policies aimed at eliminating employment discrimination, the Supreme Court has resolutely and unhesitantly entered the arena of the appropriate scope of relief which should be awarded. It has charged the district courts and courts of appeals to give potent relief, such as retroactive seniority and backpay, in effect exhorting against timidity in this area. As the Court noted in *Franks v. Bowman Transportation Co.*, 424 U.S. at 770–71, 96 S.Ct. at 1267:

> *Albemarle Paper*, [422 U.S.] at 416, 95 S.Ct. at 2371, made clear that discretion imports not the court's "inclination, but . . . its judgment; and its judgment is to be guided by sound legal principles." Discretion is vested not for purposes of "limit[ing] appellate review of trial courts, or . . . invit[ing] inconsistency and caprice," but rather to allow the most complete achievement of the objectives of Title VII that is attainable under the facts and circumstances of the specific case. 422 U.S., at 421, 95 S.Ct., at 2373.

*See also Evans v. Buchanan*, 555 F.2d 373, 378 (3d Cir.), *cert. denied*, 434 U.S. 880, 98 S.Ct. 235, 54 L.Ed.2d 160 (1977).

■ Examination of the legal precepts applied by the trial court in this case is facilitated by the explicit exposition in the court's opinion of July 12, 1978 of the factors considered in reaching its decision. Central to the decision to deny backpay was the court's belief that "the policy considerations underlying relief awarded in Title VII cases are very different from the ones involved here." In so stating, the trial court overlooked the fact that this precise argument was considered and rejected by this court on the first appeal in this matter, when the School District attempted to overturn the injunctive relief awarded on the ground that Title VII cases were inapplicable precedent. Judge Gibbons wrote:

The District urges that even if we agree that there was a due process violation, the trial court lacked the power to cure it by the award of rightful place seniority. It distinguishes cases such as *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) and *United States v. Int'l Union of Elevator Constructors*, 538 F.2d 1012 (3d Cir. 1976) as confined solely to remedies for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* But the language of Title VII in § 706(g), 42 U.S.C. § 2000e–5(g), on which the courts have relied in affording seniority relief is merely ". . . any other equitable relief as the court deems appropriate." *There is no distinction in the law of equitable remedies between suits brought under Title VII and suits brought in reliance on 42 U.S.C. § 1983, or directly on the fourteenth amendment.*

> [W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.

*Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 392, 91 S.Ct. 1999, 2002, 29 L.Ed.2d 619 (1971). The equitable relief of an award of a retroactive seniority date was, on the record before us, entirely appropriate. 556 F.2d at 188 (emphasis added).

■ The Title VII precedent instructs us that the normative principle of relief in an employment discrimination situation is the award of backpay. The award of such relief is made not solely to deter would be discriminators, as the trial court emphasized, but also to provide meaningful relief to the victims of illegal employment discrimination. In *Albemarle Paper Co. v. Moody, supra,* the Court established the presumptive right to a backpay order as a remedy for unlawful discrimination:

> [T]he [district] court has not merely the power *but the duty* to render a decree which will so far as possible eliminate the

discriminatory effects of the past as well as bar like discrimination in the future. *Louisiana v. United States*, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965). And where a legal injury is of an economic character,

> '[t]he general rule is that when a wrong has been done, and the law gives a remedy, the *compensation shall be equal to the injury* . . .'

422 U.S. at 418–19, 95 S.Ct. at 2372 (1975) (emphasis added). Similarly, it was the need for fully effective relief which impelled the Court two years later in *Franks v. Bowman Transportation Co., supra,* to direct the entry of even more far-reaching equitable relief, that of retroactive seniority, notwithstanding the effect of such relief on the expectations of other employees who were innocent third parties. The significant factor was that in no other way could the victims of discrimination be compensated effectively.

[redacted] The necessity of adopting a standard of relief which would restore the victim as fully as possible to the economic position in which s/he would have been in the absence of the employment discrimination has been recognized by this court which has, in numerous cases, adopted the "make whole" standard. In *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), we held that victims of age discrimination made illegal by the ADEA were entitled to backpay.

> The make whole standard of relief should be the touchstone for the district courts in fashioning both legal and equitable remedies in age discrimination cases. Victims of discrimination are entitled to be restored to the economic position they would have occupied but for the intervening unlawful conduct of employers. *See Franks v. Bowman Transportation Co.*, 424 U.S. 747, 763–64, 96 S.Ct. 1251, 1263–1264, 47 L.Ed.2d 444 (1976) (Title VII standard).

*Id.* at 1238. In *Jurinko v. Edwin L. Wiegand Co.*, 477 F.2d 1038, 1046 (3d Cir.), *vacated on other grounds*, 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973), we directed the trial court to expand its award to include backpay as well as seniority, stating:

> It is our view that the plaintiffs are entitled to seniority and backpay dating from the time of the discriminatory employment practice up to the time they are actually reinstated. Only in this way will the present effects of the past discrimination be eliminated.

Similarly, in *Rosen v. Public Service Electric & Gas Co.*, 477 F.2d 90, 96 (3d Cir. 1973), we reversed the trial court's denial of compensatory relief, holding such relief is "intended to restore those wronged to their rightful economic status absent the effects of the unlawful discrimination."

[redacted] As noted in the prior appeal in this case, these principles do not differ when the basis of the underlying right is the Constitution rather than a statute such as Title VII. Indeed, it would be ironic were we to hold that relief for a constitutional violation involving employment discrimination stands on a lesser ground than relief for a violation of a statutory right. Persuasive precedent establishes that there can be no effective constitutional right without a corresponding remedy. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 407, 91 S.Ct. 1999, 2010, 90 L.Ed. 939 (1971) (Harlan, J., concurring); *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946); *Paton v. LaPrade*, 524 F.2d 862 (3d Cir. 1975); *United States ex rel. Moore v. Koelzer*, 457 F.2d 892 (3d Cir. 1972).

[redacted] It is not necessary for us to assume a parity in remedy between Title VII cases and all cases brought under 42 U.S.C. § 1983. It is sufficient to note that this case, presenting as it does discrimination in employment based on stereotyped notions of ability in violation of the constitutional imperative to be judged on an individualized basis, *see Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), requires equitable remedies comparable to those deemed appropriate in Title VII employment discrimination cases. *Jurinko v. Edwin L. Wiegand*

*Co., supra.* Similar decisions have been reached in other circuits. In *Harkless v. Sweeny Independent School District,* 427 F.2d 319, 324 (5th Cir. 1970), *cert. denied,* 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971), the court found backpay to be an integral aspect of equitable relief to be awarded in a suit brought under section 1983 against a school district:

> Section 1983 was designed to provide a comprehensive remedy for the deprivation of federal constitutional and statutory rights. The prayer for back pay is not a claim for damages, but is an integral part of the equitable remedy of injunctive reinstatement. Reinstatement involves a return of the plaintiffs to the positions they held before the alleged unconstitutional failure to renew their contracts. An inextricable part of the restoration to prior status is the payment of back wages properly owing to the plaintiffs, diminished by their earnings, if any, in the interim. Back pay is merely an element of the equitable remedy of reinstatement. See *Smith v. Hampton Training School for Nurses,* supra. See also *NLRB v. Jones & Laughlin Steel Corp.,* 1937, 301 U.S. 1, 48, 57 S.Ct. 615, 629, 81 L.Ed. 893; *Agwilines, Inc. v. NLRB,* 5 Cir., 1936, 87 F.2d 146, 151.

*See also Bertot v. School District No. 1, Albany County, Wyoming,* 613 F.2d 245 (10th Cir. 1979) (en banc); *Burt v. Board of Trustees of Edgefield County School District,* 521 F.2d 1201 (4th Cir. 1975); *Ramsey v. Hopkins,* 447 F.2d 128 (5th Cir. 1971) (per curiam); *Shuman v. City of Philadelphia,* 470 F.Supp. 449 (E.D.Pa.1979); *Vega v. Civil Service Commission of New York,* 385 F.Supp. 1376 (S.D.N.Y.1974).

The trial court recognized the force of the cases enunciating the presumption of backpay as an appropriate remedy but suggested imposition of a backpay award might not be fair because the School District may not have had "notice" that its conduct toward Ms. Gurmankin was unconstitutional. Although the court stated it was not making "notice" a requirement for imposition of a backpay award, it is apparent that it did so because, while denying backpay for the period before its order of March 31, 1976, it awarded backpay for the period after that date when "defendants *were aware* of the unconstitutionality of their prior conduct." The award of backpay for the later period was justified by the trial court because of "the recalcitrance of the School District." The distinction made indicates the trial court did use the School District's good faith as a significant, and possibly the decisive, factor in its determination not to award backpay as a remedy for the earlier period.

■ Although the absence of bad faith may sometimes be an appropriate consideration in the application of equitable discretion, the Supreme Court has discounted it as a factor in determining whether backpay should be awarded for employment discrimination:

> [T]he mere absence of bad faith simply opens the door to equity; it does not depress the scales in the employer's favor. If backpay were awardable upon a showing of bad faith, the remedy would become a punishment for moral turpitude, rather than a compensation for workers' injuries. This would read the "make whole" purpose right out of Title VII, for a worker's injury is no less real simply because his employer did not inflict it in "bad faith." Title VII is not concerned with the employer's "good intent or absence of discriminatory intent" for "Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation." *Griggs v. Duke Power Co.,* 401 U.S., at 432, 91 S.Ct. at 854. See also *Watson v. City of Memphis,* 373 U.S. 526, 535, 83 S.Ct. 1314, 1319, 10 L.Ed.2d 529 (1963); *Wright v. Council of City of Emporia,* 407 U.S. 451, 461–462, 92 S.Ct. 2196, 2202–2203, 33 L.Ed.2d 51 (1972). To condition the awarding of backpay on a showing of "bad faith" would be to open an enormous chasm between injunctive and backpay relief  .  .  . .

*Albemarle Paper Co. v. Moody,* 422 U.S. at 422–23, 95 S.Ct. at 2374 (footnotes omitted).

■ Although backpay is appropriately classified as an equitable remedy, see *Great American Federal Savings & Loan Asso. v. Novotny*, 442 U.S. 366, 374, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979), thus falling within this precedent, even were it considered to be an item of damages under section 1983, the good faith of the school board officials would not be a cognizable defense in a suit brought against them in their official capacities. In *Owen v. City of Independence, Missouri*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Supreme Court resolved the dispute that had arisen on the issue by holding that the municipality enjoyed no qualified immunity from liability under the Civil Rights Act based on the good faith of the city officials involved. The Court held that conclusion was "compelled both by the legislative purpose in enacting the statute and by considerations of public policy." *Id.* at 1415. After examining the history of governmental immunity, the Court concluded that, "[n]owhere in the debates . . . is there a suggestion that the common law excused a city from liability on account of the good faith of its authorized agents, much less an indication of a congressional intent to incorporate such an immunity into the Civil Rights Act." *Id.* at 1411 (footnote omitted). From a policy standpoint, the Court noted that "[a] damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees", *id.* at 1415, and also referred to "the significance of the societal interest in compensating the innocent victims of governmental misconduct." *Id.* at 1416.

■ The decision in *Owen* also demonstrates that equitable relief cannot be denied on the basis used by the trial court here, that the officials had no notice that their actions were unconstitutional.[2] The Court said, "[t]he knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights." *Id.* The point was amplified by a footnote in which Justice Brennan, speaking for the majority, said:

> The absence of any damages remedy for violations of all but the most "clearly established" constitutional rights . . . could also have the deleterious effect of freezing constitutional law in its current state of development, for without a meaningful remedy, aggrieved individuals will have little incentive to seek indication of those constitutional deprivations that have not previously been clearly defined.

*Id.* at 1416 n. 33.

The final reason given by the trial court for its denial of backpay related to the effect of the recent decision in *City of Los Angeles v. Manhart, supra*. As discussed above, the case did not involve a refusal to hire. The issue instead involved unequal contributions to pension plans based on sexual distinctions subsequently held violative of Title VII. Although the Supreme Court did comment that "conscientious and intelligent administrators of pension funds . . . may well have assumed that a program like

2. Appellant has urged us to find that there was ample notice to the School District that its policy denying blind teachers the opportunity to demonstrate their capacity to teach sighted children was unreasonable and arbitrary. It refers us to published reports of the successful experience of blind teachers in public schools. Appellant stresses that the 1972 report of the Liberty Alliance of the Blind showing that approximately 350 blind teachers were teaching in public schools nationally, including Pennsylvania, was communicated directly to each member of the Philadelphia School Board in 1972, which nevertheless continued to adhere to its policy regarding Ms. Gurmankin and other blind applicants for teaching positions. We also note that even before the complaint in this case was filed, there was litigation in the Western District of Pennsylvania, which reached this court on a preliminary issue unrelated to the merits, challenging as unconstitutional a School District's refusal to place a blind teacher on the District's eligibility list. *King-Smith v. Aaron*, 455 F.2d 378 (3d Cir. 1972). In view of our decision, we need not decide whether these indications sufficed to provide the School District with adequate notice of the unconstitutionality of its policy toward blind teachers.

the Department's was entirely unlawful", 435 U.S. at 720, 98 S.Ct. at 1381, the uncertainty there resulted from the conflicting views held relevant by the administrative agencies. *Id.* In fact, "pension administrators could reasonably have thought it unfair—or even illegal—to make male employees shoulder more than their 'actuarial share' of the pension burden." *Id.*

▮▮▮ The *Manhart* decision to deny retroactivity was in large measure made on the basis of the enormous "potential· impact which changes in rules affecting insurance and pension plans may have in the economy." *Id.* at 721, 98 S.Ct. at 1382. "Retroactive liability could be devastating for a pension fund. The harm would fall in large part on innocent third parties." *Id.* at 722–23, 98 S.Ct. at 1382. Here, the award of backpay to one school teacher will not have a major financial impact on the defendant. Therefore, the trial court's concern that the "persons bearing the burden of the award would likely be teachers and students in the school district—innocent third parties" is not persuasive since the same is true of any award against the School District or other public entity, whether the claim is for tort liability or violations of constitutional rights.

This issue also was considered in *Owen* where the Court rejected the argument that damages should not be paid because they would come from the public treasury.

> After all, it is the public at large which enjoys the benefits of the government's activities, and it is the public at large which is ultimately responsible for its administration. Thus, even where some constitutional development could not have been foreseen by municipal officials, it is fairer to allocate any resulting financial loss to the inevitable costs of government borne by all the taxpayers, than to allow its impact to be felt solely by those whose rights, albeit newly recognized, have been violated.

*Id.* at 1417.

We do not understand appellant to contend that the backpay order should be entered against the individual defendants in their personal capacities. Therefore, we need not decide the applicability of the holding in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), where the Supreme Court enunciated a qualified, good faith immunity for school board members acting within the scope of their official duties. Appellant's claim for backpay appears to be limited to the School District or to the managerial employees named as defendants in their official capacities. We find nothing in the holding of *Wood v. Strickland, supra*, which would compel us to immunize the School District from providing complete equitable relief. See *Shuman v. City of Philadelphia*, 470 F.Supp. at 464; *Bertot v. School District No. 1, Albany County, Wyoming*, 613 F.2d at 251–52. *See also D'Iorio v. County of Delaware*, 592 F.2d 681, 690 n. 14 (3d Cir. 1978). This is particularly true when, as here, we find the appropriate relief under section 1983 employment discrimination suits to be analogous to that applicable to successful claimants under Title VII.

▮▮▮ Once the three considerations on which the trial court relied to deny backpay are recognized as insufficient in light of the underlying policy and the precedent interpreting section 1983 in the context of employment discrimination, it is evident that there was no valid basis for the decision to deny backpay. Appellant was effectively unemployed for the entire period for which backpay was sought. She was forced to subsist largely on a small monthly state blind pension and social security disability which gave her a total subsistence of $200 a month. No facts or circumstances relating to appellant personally were cited by appellee or articulated by the trial court which would derogate from the exercise of the court's equitable discretion in her favor. In effect, the denial of backpay is inconsistent with the trial court's prior order, affirmed here, granting her seniority effective September 1970. A determination that appellant was entitleᴅ to have been employed as of September 1970 has little meaning without a corresponding determination that she was entitled to be paid for the entire period she was entitled to be employed.

Therefore, since the factors relied on by the trial court and the weight given to them were not in accordance with the exercise of sound discretion, we will vacate so much of the Court's order of July 12, 1978 as denied appellant's request for backpay for the period prior to March 31, 1976 and direct the entry of an order granting backpay for the period beginning September 1970.

Appellant also requested the district court to award her tenure as part of the equitable remedies to which she was entitled as a result of the School District's violation of her constitutional rights. In denying the request to award tenure, the district court ruled as follows:

> Plaintiff's request for court-ordered tenure is denied as tenure is not a "right" within the scope of the March 31, 1976, Order nor a remedial measure that is appropriate in this initial hiring case. Although certain relief, such as the pension benefits and vacation days, may be appropriate in a case involving unconstitutional conduct in initial hiring, even though it is not certain that if plaintiff had been initially hired she would have received such benefits, a tenure award is not. Besides requiring continued employment (common also to an award of pension benefits and vacation days), for tenure to be granted the School District normally must rule that the teacher has performed satisfactorily. 24 P.S. 11–1121. If the Court were to require defendants to award plaintiff tenure, it would be placing plaintiff in a better position than she would otherwise have been in but for defendants' unconstitutional conduct, as, unlike other teachers, she would have escaped the School District's review of her performance. This would be impermissible and unnecessary to remedy the effects of the past discrimination and therefore, the Court must deny the request. Nevertheless, the Court reminds the parties that defendants remain under an obligation when rendering their tenure decision to treat plaintiff within the bounds of constitutional and statutory restraints and cautions the parties that the Court's

decision refusing plaintiff's request for tenure is not based upon the Court's evaluation of plaintiff's capabilities, but is mandated solely by the requirements of law.

On appeal, appellant claims that the court erred as a matter of law in holding that it was without power to award tenure and abused its discretion in the denial of this equitable relief. Appellant relies on this court's opinion in *Kunda v. Muhlenberg College*, 621 F.2d 532 (3d Cir. 1980), a Title VII case, where we held that tenure could be awarded under appropriate circumstances and affirmed the district's tenure award.

A reading of the district court's opinion in this case shows that the district court was exercising its discretion when it held that tenure would not be an appropriate award under the circumstances of this case. We agree. In *Kunda* we were careful to point out that courts must be vigilant not to intrude into the institutional determination with regard to the evaluation of the performance of the tenure candidate. We said "determinations about such matters as *teaching ability,* research scholarship, and professional stature are subjective, and unless they can be shown to have been used as the mechanism to obscure discrimination, they must be left for evaluation by the professionals. . . ." 621 F.2d at 548 (emphasis added).

In the *Kunda* case, unlike this one, Kunda's achievements, qualifications and prospects were not in dispute. Therefore, we hold that we were not interfering with academic determinations in awarding Kunda tenure once she achieved the degree, the absence of which had been the only basis for the institutional determination not to grant tenure in the first instance. Unlike that situation, appellant here requested the trial court to grant her tenure without having given the School District an opportunity to evaluate her qualifications and performance as a teacher. As the trial court recognized, if it awarded tenure under those circumstances, it would be putting appellant in a better position than she would have

been in the absence of the constitutional violation. The court correctly held that it was not appropriate to frame such drastic relief in this case.

For the foregoing reasons, we will affirm so much of the district court's order as denied the award of tenure and will vacate that portion of the order which denied her request for backpay for the period prior to March 31, 1976 and remand this case with direction that the district court enter an order granting backpay for the period beginning September 1970.

GARTH, Circuit Judge, dissenting in part and concurring in part:

I am obliged to dissent from the majority opinion insofar as the majority awards additional backpay to Ms. Gurmankin for the period 1970 to 1976. By so doing the majority has sought to import into a section 1983 constitutional cause of action, a congressionally mandated statutory presumption peculiar to Title VII actions. There being no precedent, historical consideration, or indeed any reason for constructing such an equation, I dissent.

However, the majority has also held that the district court properly exercised its discretion in denying Ms. Gurmankin tenure. In this respect, I wholeheartily concur with the majority, not only because of the majority's reasoning, but more particularly because of the views expressed in my dissenting opinion in *Kunda v. Muhlenberg College*, 621 F.2d 532 (3d Cir. 1980).

If the only issue on which I differed from the majority was the proper exercise of the district court's discretion in denying backpay, there would be little point in any extended discussion. I would merely indicate, as I do in Part II of this dissent, that while I myself, were I sitting as a district court judge, might have found otherwise, I could not say that the district court judge who decided the question of backpay decided it incorrectly. My concern, however, is a much deeper one. In concluding that the district court abused its discretion, the majority has for all practical purposes held that the presumption in favor of backpay,

which is a presumption to be applied *only* in Title VII cases and in age discrimination cases, must be applied as well in cases such as this one, which was brought and adjudicated solely under 42 U.S.C. § 1983. The majority has so held by incorrectly attributing such a rule of law to an earlier appeal in this case and without citing any precedents that so hold.

Because such a holding is incorrect in my view and can have such a profoundly pernicious effect on future cases, I think it is important to meet this issue squarely. It is readily apparent from the majority's opinion that once it has held that the presumption of backpay must be applied, the outcome of the case is preordained. Because I believe that the authorities upon which the majority relies are inapposite, and because I am convinced that neither reason nor logic dictates the result reached by the majority, I respectfully dissent.

I.

While I recognize that the narrow issue before the court is whether the district court judge abused his discretion, the more troubling issue, as I have indicated above, is whether we are bound to give effect to a presumption of backpay which has never been required in any section 1983 context. Since, as I have also indicated, I am satisfied even in the face of this presumption that the district court properly exercised its discretion in denying backpay for the period prior to March 1, 1976, it is clear to me that the result reached by the district court was proper where no presumption of backpay exists. I therefore turn first to the overriding issue: whether the Title VII presumption of backpay is to be invoked in an action under section 1983 involving a handicapped (blind) teacher who had been denied employment in a public school system by reason of her handicap.

The majority, of course, denies equating Title VII and section 1983:

It is not necessary for us to assume a parity in remedy between Title VII cases and all cases brought under 42 U.S.C. § 1983. It is sufficient to note that this

case, presenting as it does discrimination in employment based on stereotyped notions of ability in violation of the constitutional imperative to be judged on an individualized basis . . . requires equitable remedies comparable to those appropriate in Title VII employment discrimination cases.

Majority op., *supra*, at 1121 (citation omitted). But this caveat cannot obscure the sweeping scope of the majority's holding. Since the majority recognizes that the gravamen of every section 1983 cause of action is "discrimination . . . based on stereotyped notions," it is evident that despite its disclaimer, the majority has extended the Title VII presumption of backpay to *all* employment discrimination cases, including those where Title VII has utterly no application.

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 413–23, 95 S.Ct. 2362, 2369, 2374, 45 L.Ed.2d 280 (1975), and its progeny clearly reveal the origin of the Title VII presumption. Title VII was aimed at a specific evil in a particular context. Its narrow purpose was to eradicate discrimination *in the workplace* and make whole victims of such discrimination where the basis of the discrimination was illegal consideration of the factors of *race, religion, sex,* and *alienage.* While discrimination on the basis of *disability* may be every bit as onerous as discrimination with respect to race, religion, sex, and alienage, nevertheless, Congress did not, at any time relevant here, see fit to include the disabled within the protection of Title VII. The Supreme Court has read into Title VII a presumption of backpay in order to effectuate the congressional decision to tip the scales against employers who persist in creating the egregious economic problems to which Title VII was a response. I would have no trouble applying the same presumption of backpay to an employment discrimination claim whenever discrimination *based on the same characteristics (race, religion, sex, and alienage) enumerated in Title VII* was challenged, even if the claim was asserted not under Title VII for some reason but only under section 1983. Similarly, it makes sense to invoke this presumption, as this court has done, in the context of a later statute whose purpose parallels that of Title VII. *See, e. g., Rodriquez v. Taylor*, 569 F.2d 1231, 1237–38 (3d Cir. 1977) (Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634). But I do not and cannot agree that in every section 1983 employment discrimination case, the traditional sound discretion of the district court to award retroactive relief, or not to award it, should be burdened by the imposition of a presumption of backpay that is neither necessary nor justified by the legislative history of those enactments. The comprehensive post-Civil War civil rights legislation simply cannot be analogized to the Title VII and Age Discrimination in Employment statutes of the mid-Sixties, which specifically targeted the discrete evils enumerated in these latter statutes. Indeed, in no prior case have we or has the Supreme Court held the presumption of retroactive relief applicable in a general section 1983 context.

The majority misinterprets the language of the prior appeal in this case, *Gurmankin v. Costanzo*, 556 F.2d 184, 188 (3d Cir. 1977) (*Gurmankin I*). It is clear that we were there discussing the *power* of a district court to grant relief in an action brought under section 1983. That case does not equate section 1983 with Title VII for the purpose of applying a presumption of backpay or in any context other than the power of a court to make equitable awards. This is amply borne out by the citation of *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which concerned, respectively, the jurisdiction of the federal courts and the existence of a cause of action grounded directly on the fourth amendment for recovery of damages for unreasonable searches and seizures. Neither *Bell* nor *Bivens* limited or channeled the discretion of federal courts to award or not to award equitable relief. To bolster its argument, the majority places reliance on the *Gurmankin I* statement, which as I have stated,

focused not on equating remedies but rather on the extent of a court's power: "There is no distinction in the law of equitable remedies between suits brought under Title VII and suits brought in reliance on 42 U.S.C. § 1983, or directly on the fourteenth amendment," 556 F.2d at 188, see Majority op., *supra*, at 1120. I suggest that the quoted sentence from *Gurmankin I* has been taken out of context by the majority, and the majority opinion has thus transformed an infelicitous choice of words into an erroneous rule of law.

The simplistic reasoning of the majority—noting the irony of holding that "relief for a constitutional violation stands on a lesser ground than relief for a violation of a statutory right," *id.* at 1121—similarly misses the mark. It does not derogate from the sanctity or value of a constitutional right to acknowledge the historical fact that Congress saw fit, but only in certain instances, to circumvent some of the traditional legal and equitable judicial doctrines by supplementing the constitutional right with statutory causes of action under which relief would be easier to obtain. Title VII, which applies only to *employment* discrimination based on *race, religion, sex,* and *alienage* classifications, falls within this category. It makes retroactive relief easier to obtain, through the use of a presumption, and it eases the plaintiff's burden of proof by shifting the burden of producing evidence to the employer once a *prima facie* case has been presented, *see, e. g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Nevertheless, in circumstances where Congress has not so acted, it is not for this court to assume Congress' legislative role.

For this reason, I would decline to follow the example of the cases from other circuits cited by the majority, Majority op., *supra*, at 1121–1122, even if they unequivocally supported the extension of the presumption of backpay beyond Title VII, which none do. When the Fifth Circuit in *Harkless v. Sweeny Independent School District,* 427 F.2d 319 (5th Cir. 1970), *cert. denied,* 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971),

held that backpay was an integral part of reinstatement relief under section 1983, its point was made *not* with reference to the appropriateness of an award of backpay, but rather by way of characterizing the claim as "equitable" so as to deny a jury trial. *See* 427 F.2d at 323–24. *Burt v. Board of Trustees,* 521 F.2d 1201 (4th Cir. 1975) (per curiam); *Ramsey v. Hopkins,* 447 F.2d 128 (5th Cir. 1971) (citing *Harkless*), *remanding per curiam* 320 F.Supp. 477 (N.D.Ala.1970), and *Vega v. Civil Service Commission,* 385 F.Supp. 1376 (S.D.N.Y. 1974), also involved discriminatory discharges rather than, as is the case here, arguably legitimate refusals to hire. The conclusion reached by cases like *Harkless* that backpay in wrongful discharge cases was an issue for the court to decide incident to the main equitable claim for reinstatement has been roundly criticized as flatly inconsistent with *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). *See, e. g., Rogers v. Loether,* 467 F.2d 1110, 1121 (7th Cir. 1972), *aff'd sub nom. Curtis v. Loether,* 415 U.S. 189, 196–97 & n. 13, 94 S.Ct. 1005, 1009–1010, 39 L.Ed.2d 260 (1974) (explicitly declining to express any opinion on the *Harkless* rule); *Leathers v. Martin County Board of Education,* 65 F.R.D. 68, 69–70 (E.D.N.C.1974). *Rogers* in dictum proposed a restitution theory to justify characterization of the relief as equitable, but *Leathers* pointed out that:

> [t]his theory could hardly hold up in most wrongful discharge cases, however, because usually the school board (or whoever the defendant is) would hire another teacher in the place of the wrongfully discharged teacher and would therefore have no gain or unjust enrichment. This would be true in the instant case, because the defendants in this case are paying the principal's salary to someone, even if not the plaintiff. Furthermore, it is difficult to see how backpay could be characterized as an equitable remedy. Surely, it could be asked for as damages in an action in a court of law.

*Id.* at 70.

In wrongful discharge cases, therefore, it is not at all surprising to find backpay fully

justified on a theory of compensatory contract recovery. The determination of legal damages for breach of contract does not involve any exercise of discretion, and no presumption of backpay need ever be called into play. Indeed, the badly split *Burt* panel held that to the extent the district court proceeded in equity rather than at law to determine backpay, the district court would retain its discretion to refuse to award full relief, *see* 521 F.2d at 1203, 1206. It should be noted further that *Harkless, Ramsey,* and *Vega* were decided before the establishment of *Albemarle's* presumption formulation, and thus do not speak in terms of a presumption of backpay. *Shuman v. City of Philadelphia,* 470 F.Supp. 449 (E.D.Pa. 1979), also a discharge case, held merely that despite *Monell v. Department of Social Services* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality did not always enjoy even qualified immunity from suit under section 1983.

The only case cited in the majority opinion which arguably supports the majority's thesis is *Bertot v. School District No. 1,* 613 F.2d 245 (10th Cir. 1979) (en banc). But the *Bertot* opinion does not substantiate its bald statement that:

> [u]nder § 1983, as under Title VII, there is "nothing on the face of the statute or in its legislative history that justifies the creation of drastic and categorical distinctions between those two remedies."

*Id.* at 250 (quoting *Albemarle,* 422 U.S. at 423, 95 S.Ct. at 2374). Indeed, the actual *Bertot* holding, as noted in *Shuman,* was that in a section 1983 *wrongful discharge* action against a school district, backpay was an equitable rather than a legal remedy and therefore was "not precluded by a good faith defense," *Bertot,* 613 F.2d at 250. This conclusion itself was criticized by two dissenters, who objected to the characterization of this type of compensatory relief as equitable, *see id.* at 255 (Barrett, J., dissenting, joined by Seth, C. J.).

It seems to me, that therefore, that aside from any other considerations the bridge erected between Title VII and section 1983 by the majority utilizing inapposite holdings and reasoning drawn from wrongful discharge cases is a frail structure at best. *Gurmankin* was never wrongfully discharged, and no contract of hers was ever breached. Rather, as everyone agrees, she was denied initial employment, which denial was ultimately held to have violated her constitutional rights. This distinction is highly significant, particularly when recognition is given to the Commonwealth's policy as expressed by statute. Pa.Stat.Ann. tit. 24, § 21–2108 (Purdon 1962). That enactment permitted and still permits each school district to establish its own physical fitness qualifications as a precondition to employment, an option exercised by the school district in this case until 1974, when passage of the Rehabilitation Act of 1973 [1] made clear that blind teachers could not for that reason alone be prohibited from teaching sighted students.

Thus, while *Gurmankin I* does no more than acknowledge the power in a district court judge to make equitable adjustments and to grant backpay as a matter of equity in section 1983 cases, *see* 556 F.2d at 188, neither the precedents, historical considerations, the character of the discrimination charged, nor logic require that the same presumption of backpay which the Supreme Court has declared in Title VII cases, obtain in cases brought under section 1983.

**II.**

The district court here recognized the distinction which I have just addressed between Title VII cases and section 1983 cases. In so doing, it did not rely wholly on the fact that Gurmankin's action was not brought as a Title VII action, as it could not have been. Rather, in exercising its discretion, it balanced the presumption in favor of backpay—which is an aspect peculiar to

---

1. Pub.L.No.93–112, 87 Stat. 357 (codified at 29 U.S.C. §§ 701–794). In particular, § 504 of the Act 29 U.S.C. § 794, now prohibits "discrimination under any program or activity receiving Federal financial assistance." As we indicated in *Gurmankin I,* 556 F.2d at 186, because the Act was not promulgated until 1973, § 504 cannot support the relief sought by Gurmankin, whose claim predated § 504's enactment.

Title VII and which reflects the need to make plaintiffs whole for losses suffered—against the absence of the other factor that usually serves to justify backpay—a legislative desire to deter future violations and thus eradicate discrimination in the workplace. It also credited Gurmankin with the benefit of all doubts, going so far as to draw upon cases which applied a presumption of backpay[2] even though Gurmankin's claim did not entitle her to that presumption.

The district court recognized that backpay would be required to make Gurmankin whole. But just as the Supreme Court, in overturning an award of retroactive relief, found unusual circumstances in a Title VII context in *City of Los Angeles, Department of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), which circumstances rebutted the presumption of retroactive relief, resulting in its denial the district court found unusual circumstances in this case that tipped the scales of equity against an award of complete backpay.[3] In *Manhart*, the Supreme Court focused on the grave financial impact that would have been posed by granting such relief, and also focused on congressional solicitude for the insurance industry, which would have had to bear the consequent burden. In the instant case, the district court focused on the unique situation where discrimination against a blind teacher was found in an educational setting.

The district court found that the school district had not acted in bad faith. Pursu-

ant to the state enabling statute to which I have previously referred, the school district had established guidelines that, among other things, prohibited blind teachers from teaching sighted students, on purported grounds of physical fitness. Given the then-prevalent attitudes toward the handicapped, this might not have seemed unfair or unreasonable, even if other states or other school districts reached the opposite conclusion, *see* Majority op., *supra* at 1123 n. 2.[4] In 1974, after section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, went into effect, these school regulations predicated upon the Commonwealth's enabling statute were rescinded, and Gurmankin was then permitted to take the qualifying examination, although the school district still did not actually offer her a job on acceptable terms.

Good faith alone, it is true, will not preclude a make-whole award of backpay, *Albemarle*, 422 U.S. at 422–23, 95 S.Ct. at 2373–2374; *Palmer v. General Mills, Inc.*, 600 F.2d 595, 598–99 (6th Cir. 1979), but it is a factor to be considered as the district court did in judging whether an award of backpay is needed for deterrence purposes. In the normal Title VII case, backpay is needed to deter discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a). Consideration of these factors in employment decisions has been clearly illegal since passage of Title VII in 1964.[5] An employer who bases an employment decision on any of these factors must be deemed on constructive no-

---

**2.** *E. g., Albemarle, supra* (presumption of backpay in Title VII cases); *Rodriguez v. Taylor*, 569 F.2d at 1238 (same in cases brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 718–24, 98 S.Ct. 1370, 1380–1383, 55 L.Ed.2d 657 (1975) (instance of abuse of discretion in awarding backpay).

**3.** It must be remembered that Gurmankin was awarded backpay from and after March 1, 1976. The backpay which she seeks here and which the district court denied is from September 1970 to March 1, 1976.

**4.** *Cf. Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980

(1979) (not illegal under 42 U.S.C. § 1983 or Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794, to exclude deaf person from nursing program on physical fitness grounds); *Kober v. Westinghouse Elec. Corp.*, 480 F.2d 240 (3d Cir. 1973) (no abuse of discretion in denying backpay where illegal discrimination resulted from good faith compliance with state law). *Kober* predated *Albemarle*, but the *Albemarle* Court explicitly refused to decide whether *Kober* survived *Albemarle*, the case which firmly established the presumption of backpay in Title VII cases, 422 U.S. at 423 n. 18, 95 S.Ct. at 2374.

**5.** Civil Rights Act of 1964, Pub.L.No.88–352, § 703(a), 78 Stat. 241.

tice that his action may violate Title VII. The employer's "good faith" belief that his particular practice was permitted and was not illegal, will not excuse him from making his victim whole for a discriminatory action that is subsequently held not to have been justified. By comparison, history in the instant case bears out the district court's observation that no award of backpay is now needed to deter others from discriminating against blind teachers. For with the passage of the Rehabilitation Act of 1973 and other statutes,[6] and with the concomitant dramatic change in societal attitudes toward the handicapped, it has become abundantly clear that the discriminatory practices found in this case no longer pose a problem of any dimension. Thus, in the exercise of its discretion, it was appropriate for the district court to limit its award of backpay to that period after the employer was first found in violation, a period for which the employer's *bad faith* in not hiring Gurmankin is dispositive of equitable questions.[7]

*Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), upon which the majority relies, does not dictate a result different from the one I advocate. It is true, as the majority opinion recites, that under *Owen,* a municipality no longer enjoys even a qualified immunity from civil rights liability based on the good faith of its officials. But the district court here did not grant immunity to the defendants, and immunity was never an issue. What the district court did do, was to look to the then-relevant Pennsylvania statutes and the conduct of the school district officials pursuant to those statutes. The court found that the officials acted in good faith in their initial refusal to hire a blind teach-

er. Relying on this factor, *as well as on others,* the district court exercised its equitable discretion and denied Gurmankin backpay to March 1, 1976. *Owen,* an unlawful discharge-immunity case, does not require or even suggest that in the present context of a refusal-to-hire case, good faith considerations are to be excised from a district court's equitable discretionary determinations.

The district court granted Gurmankin substantially all of the relief which she sought. The school was ordered, as a primary matter, to hire her.[8] She was credited with building seniority and sick and personal leave for the full period of the discrimination.[9] The school district was required to make contributions to the pension and retirement fund on her behalf for the full period as well.[10] She was awarded backpay for the period from March 1, 1976 until the date of her employment.[11] The only relief which she was denied was tenure[12], (a denial of relief affirmed unanimously by this court today), and backpay from September 1970 to March 1, 1976,[13] —the only issue on which the majority and I disagree.

The district court's remedial order in this respect is far from being internally inconsistent as the majority opinion charges. Majority op., *supra,* at 1124. The district court's orders illustrate the essentially *equitable* nature of retroactive relief. The general precepts governing the award of such relief must be applied carefully on a case-by-case basis, and the relief granted in each case will be a mixture of some or all of the possible equitable remedies, as the district court in its sound discretion finds appropriate. The district court arrived at the altogether reasonable conclusion that for the

---

6. *See, e. g., Gurmankin I,* 556 F.2d at 186 & n. 2 (citing state statutes).

7. The district court also relied on the fact that the impact of an award of backpay would fall on innocent third parties—students and other teachers. Since any such impact was admittedly minimal, and in any event the impact was not described, I agree with the majority that this is not a proper basis for the district court's discretion. Nevertheless, I find the decision supportable for the reasons outlined above.

8. 411 F.Supp. 982 (E.D.Pa.1976), *affd.* 556 F.2d 184 (3d Cir. 1977).

9. Orders of March 9, 1979, February 5, 1980.

10. *Id.*

11. Orders of July 12, 1978, February 5, 1980.

12. Orders of March 9, 1979, February 5, 1980.

13. *Id.*

period before the school district's obligations were judicially determined, an award of backpay was not justified, considering the attendant circumstances.

Thus, I would find no error in the district court's conclusion that this case does indeed present the circumstance where backpay has properly been denied "for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination," *Albemarle*, 422 U.S. at 421, 95 S.Ct. at 2373 (footnote omitted).

### III.

Because I believe that the district court properly exercised its discretion, even if a presumption of backpay had to be met, which in a section 1983 context I do not believe is appropriate, I would affirm in full the district court's order of February 5, 1980, which granted backpay only from March 1, 1976.