Dr. Andrew C. DeSANTO, Plaintiff,

v.

ROWAN UNIVERSITY, Dean David Kapel, Jane Roe, John Doe, Defendants.

Civil Action No. 99–3952.

United States District Court, D. New Jersey.

Aug. 22, 2002.

Dennis K. Kuroishi, Esq., Mt. Ephraim, NJ, for Plaintiff, Dr. Andrew C. DeSanto.

David Samson, Esq., Attorney General of New Jersey, Jane A. Greenfogel, Esq., Deputy Attorney General, Linda V. Alexander, Esq., Deputy Attorney General, Richard J. Hughes Justice Complex, Trenton, NJ, for Defendants, Rowan University, Dean David Kapel, Jane Roe, John Doe.

OPINION

ORLOFSKY, District Judge.

## I. BACKGROUND

Plaintiff, Dr. Andrew C. DeSanto ("DeSanto"), was employed by Defendant, Rowan University ("University"), from September 1994 through June 1998. DeSanto was originally hired as a temporary replacement for one year for a faculty member on medical leave, and then, was rehired for temporary three one-year contracts to replace a second faculty member who had accepted a temporary dean's position. Alexander Aff., Exs. C, D. DeSanto applied for four positions in 1998. One of these positions was a tenure-track position, one was a managerial position, one was a part-time position, and one was a temporary position. Alexander Aff., Ex. E. DeSanto was not hired for any of those positions.

On August 20, 1999, DeSanto filed a complaint in this Court against the University and the University's Dean, David Kapel ("Kapel"), alleging that they unlawfully discriminated against him in his employment on the basis of age, race, gender and national origin, in violation of 28 U.S.C. §§ 1981, 1983, 1985, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 29 U.S.C. § 621 *et seq.* ("ADEA"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5–1 *et seq.* ("NJLAD").

On July 17, 2001, the Honorable Joel A. Pisano heard oral argument on Defendants' motion for summary judgment and DeSanto's cross-motion for summary judgment. Tr. of Hr'g before Hon. Joel A. Pisano, Civ. A. No. 99–3952 (D.N.J. July 17, 2001). In a bench opinion, Judge Pisano ruled that: (1) DeSanto could not prove an entitlement to tenure, pursuant to N.J. Stat. Ann. § 18A:60–8; (2) there was no substantive basis for a separate claim under §§ 1981, 1983, and 1985, *id.* at 25; (3) there was insufficient evidence in the summary judgment record to sustain DeSanto's claim of discrimination on the basis of national origin, *id.* at 38; (4) questions of material fact existed on DeSanto's claims of employment discrimination on the bases

of age, gender, and race, pursuant to Title VII, the ADEA, and the NJLAD, *id.* at 38; and, (5) DeSanto was barred by the two-year statute of limitations from bringing any discrimination claims based on conduct occurring before August 20, 1997. *Id.* at 32. Therefore, by Amended Order, dated July 19, 2001, Judge Pisano: (1) dismissed DeSanto's claims under §§ 1981, 1983, and 1985; (2) dismissed DeSanto's claims made pursuant to Title VII, the ADEA, and the NJLAD for events which occurred prior to August 20, 1997; (3) denied DeSanto's cross-motion for summary judgment, and, (4) dismissed DeSanto's Title VII and NJLAD claims which were premised on discrimination on the basis of national origin. Order, *DeSanto v. Rowan University*, Civ. A. No. 99–3952 (D.N.J. July 19, 2001).

With trial scheduled to begin on September 9, 2002, Defendants have filed an exhaustive list of *in limine* motions, seeking to preclude or limit DeSanto from introducing certain evidence. I will address each motion below.

## II. DISCUSSION

### A. Motion to Prohibit Plaintiff from Introducing Evidence or Testimony Regarding Entitlement to or Property Interest in Tenure and to Bar Plaintiff from Receiving the Equitable Relief of a Tenured Position

 Judge Pisano clearly held that DeSanto could not demonstrate that he was entitled to tenure pursuant to N.J. Stat. Ann. § 18A:60–8, because he had not served the requisite number of years, and because the temporary positions he held would not have entitled him to an expectation of a full-time position, or of tenure. Tr. at 21–25. Accordingly, Judge Pisano ruled that DeSanto could not pursue a deprivation of due process claim, under the Civil Rights Act. *Id.* at 25. Despite this unequivocal ruling, DeSanto has included allegations that he was entitled to tenure and was denied due process in the Joint Final Pre Trial Order, and seeks the equitable relief of instatement in a tenured position at the University. J.F.P.T.O. at 2, 7, 8, 14, 20, 21. Defendants move to prohibit DeSanto from introducing evidence that he was entitled to tenure or possessed a constitutional property interest in tenure.

It is clear from Judge Pisano's July 19, 2001 Order that DeSanto's argument asserting an entitlement to tenure has been dismissed from this case. Accordingly, DeSanto shall be precluded from introducing evidence in support of such a claim at trial. DeSanto also alleges, however, that certain representations made by his superiors at the University induced him to believe that he might be considered for tenure if he provided service beyond that required by his yearly contracts. *Id.* at 18. To the extent that such evidence is relevant to proving his claim for intentional discrimination, it shall be permitted.

 Defendants also move to bar DeSanto from receiving the equitable remedy of instatement to a tenured position. As an initial matter and as discussed more fully below, the decision to grant the equitable remedy of reinstatement, rather than an award of "front pay," is a question for the Court to decide. *See* discussion *supra,* Part II.L.1. The Defendants argue that because Judge Pisano found that DeSanto had no entitlement to tenure, the only equitable remedy that DeSanto might be awarded if the jury finds that Defendants unlawfully discriminated against him would be reinstatement to the *tenure-track* position, not to a *tenured* position. To award DeSanto a tenured position, Defendants argue, would allow him to by-pass the additional requirements necessary for tenure-track employees to gain tenure,

namely, five years of service in a tenure-tracked position, substantial contributions to scholarly research, demonstrated service to the University, and rigorous review by a faculty committee. *See generally,* Alexander Aff. at Exs. F, G.

The United States Court of Appeals for the Third Circuit has agreed with Defendants' arguments under very similar circumstances. *Gurmankin v. Costanzo,* 626 F.2d 1115, 1125 (3d Cir.1980).[1] Thus, in the event that the jury finds in favor of DeSanto and I decide that the equitable remedy of reinstatement is appropriate under the circumstances of the case, I conclude that the maximum equitable remedy which is available to DeSanto is reinstatement to a *tenure-tracked position,* not to a *tenured position.*

## B. Motion to Preclude Introduction of Documents or Testimony of Defendants' Affirmative Action Plan

■ Defendants move to exclude evidence relating to the University's Affirmative Action Plan pursuant to Fed.R.Evid. 401, 402, and 403. Defendants argue that because there is no evidence that the Affirmative Action Plan was the basis for Defendants' personnel decisions regarding DeSanto, it is irrelevant and would confuse the jury. Defendants argue, in the alternative, that if such evidence is admitted, it should be limited to the plan or plans that were in effect after August 20, 1997. This, Defendants argue, would be in keeping with Judge Pisano's ruling limiting DeSan-

to's claims to those which occurred after August 20, 1997.

DeSanto argues that the University's Affirmative Action Plan, when viewed in combination with the increase in hiring of female and racial minorities after the institution of that Plan, and statements made by the Affirmative Action Officer, Richard A. Williams, is relevant to show that he was denied a tenure-track position because he was an older white male.

Fed.R.Evid. 401 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 dictates that relevant evidence is admissible, while evidence which is not relevant is not. Finally, Rule 403 allows the exclusion of relevant evidence if is "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, ... undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

In his ruling of July 17, 2001, Judge Pisano allowed DeSanto's claims of discrimination based on sex, age, and race to go forward because he found that questions of material fact existed as to whether Defendants' reasons for not hiring DeSanto were pretextual. Specifically, Judge Pisano cited the following evidence proffered by DeSanto: (1) statements allegedly made by Kapel that DeSanto would never

---

1. In *Gurmankin,* the Third Circuit affirmed the District Court's ruling that a successful plaintiff in an employment discrimination case was not entitled to the equitable remedy of tenure. The Third Circuit agreed with the District Court's finding that "to require defendants to award plaintiff tenure, ... would be placing plaintiff in a better position than she would otherwise have been in but for defendants' unconstitutional conduct, as unlike

other teachers, she would have escaped the School District's review of her performance." *Gurmankin,* 626 F.2d at 1125. To grant the relief of tenure, the Third Circuit found, would have been "intrud[ing] into the institutional determination with regard to the evaluation of the performance of tenure candidates" which is properly within the School District's purview. *Id.*

get tenure; (2) statements and conduct of Affirmative Action Officer Williams in instituting the University's Affirmative Action Plan; and, (3) *the University's Affirmative Action Plan*, itself. Tr. at 38. The University's Affirmative Action Plan is relevant to DeSanto's claims of discrimination if Defendants applied the Plan in a manner which unlawfully discriminated against Caucasian males in order to increase the diversity of the teaching staff.

■ Furthermore, the Court can discern no legal principle, nor have the Defendants advanced one, that supports limiting the introduction into evidence of the University's Affirmative Action Plans that were in effect after August 20, 1997. The claims which DeSanto is entitled to assert were limited because of his failure to file them before the expiration of the applicable statute of limitations. There is no rational relationship, however, between this temporal limitation and a limitation on the evidence, if relevant, which may be introduced in support of his viable claims. To bar DeSanto from introducing the University's Affirmative Actions Plans from before August 20, 1997, would prevent him from attempting to show a relationship between the University's Affirmative Action Plans and an increase in the diversity of the University's teaching staff. Accordingly, Defendants' motion to bar introduction of the University's Affirmative Action Plan shall be denied.

### C. Motion to Preclude Introduction of Evidence Pertaining to DeSanto's Claims of Discrimination Based on "National Origin"

■ In his bench opinion, Judge Pisano clearly found that "there is insufficient evidence in this record, indeed there's no evidence in this record from which it can be established or even argued, . . ., that there's been discrimination on the basis of him [sic] being Italian American." Tr. at 38. In his July 19, 2001 Order, Judge Pisano ordered "defendants' motion to dismiss any claims based [sic] which arise under Title VII and NJLAD and which are based on national origin is granted and those claims are dismissed." Accordingly, Defendants' motion *in limine* to bar DeSanto from introducing evidence that he was discriminated against based upon his "national origin" shall be granted.

### D. Motion to Preclude Introduction of Evidence Relevant to Hiring Decisions Made Before August 20, 1997

■ In his bench opinion, Judge Pisano "dismiss[ed] any Title VII and NJLAD and ADEA claims which occurred prior to August 20, 1997" because of DeSanto's failure to file his complaint before the expiration of the applicable statute of limitations. Tr. at 32. Based on that exclusion, Defendants now move to preclude DeSanto from introducing evidence of any of the University's hiring decisions that occurred before August 20, 1997.

While Judge Pisano's ruling bars any claims which DeSanto might have pursued based on conduct that occurred before August 20, 1997, it does not mean that "the events surrounding [his timely claims] are not relevant evidence which [DeSanto] could use at trial." *Stewart v. Rutgers, The State University*, 120 F.3d 426, 433 (3d Cir.1997)(citing *United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977))("A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history

which has no present legal consequences.").

Accordingly, although DeSanto may not pursue any claims of discrimination based upon events which occurred before August 20, 1997, he may introduce evidence of those events provided they constitute "relevant background evidence."

**E. Motion to Preclude Plaintiff's "Other Acts" Evidence**

■ DeSanto seeks to introduce into evidence a letter from Dean Kapel to Dr. James, President of Rowan University, outlining the reasons why Dr. Shirley A.B. Muller was denied re-contracting for a fifth year, Alexander Aff. at Ex. G, and a letter from Kapel to James concerning the re-contracting of Dr. Marguerite McInnes, in the Department of Secondary Education/Educational Foundations. *Id.* at Ex. H. DeSanto contends that these letters demonstrate the fact that he received disparate treatment because Drs. Muller and McInnes, both females, were given certain procedural safeguards, which he should have, but did not, receive.

Defendants argue that the letter concerning Dr. Muller is not relevant to this case because it involved a tenure-track position, a different stage of review, and a different set of participants, and because the letter does not support the conclusion that discrimination played a role in the decision not to re-contract Dr. Muller. Defendants argue that the second letter concerning Dr. McInnes is not relevant because there is no indication that discrimination played a role in the decision not to re-contract McInnes, and because that decision occurred two and half years before DeSanto began working at the University. Finally, Defendants assert that DeSanto's

contention that he should have been afforded the same procedural safeguards as Drs. Muller and McInnes amounts to an argument that he was entitled to continued employment, a claim which has previously been dismissed from this case.

The University's "Recontracting and Tenure" guidelines, Alexander Aff., Ex. F, were produced through negotiation between New Jersey's State Universities and Colleges and the state-wide teacher's union, of which DeSanto is a member. Section 2.2 of the "Recontracting and Tenure Handbook 1999–2000"[2] provides, in pertinent part:

> Full-time temporary faculty have the same rights and responsibilities as tenure-track faculty....

> The Master Contract requires that the normal evaluation procedures be used for the review of full-time temporary employees up to and including the first administrative level (Article XII, D). The following process for the evaluation of full-time temporary employees will apply:

> 2.21 Full-time temporary employees will receive a full review at the department/office level following the same procedure that is used for the evaluation of tenure/multi-year track, probationary candidates.

> 2.22 Evaluative materials will then be transferred to the appropriate Dean by the Chair of the Department Recontracting and Tenure Committee. The Senate Recontracting and Tenure Committee is not part of the evaluative process for temporary appointments.

---

**2.** Defendants did not produce the relevant handbooks for the years 1994–1998 because they were "not available," but represent that "[o]nly superficial changes were made to the

1999–2000 handbook, which would not impact any issue in this case." Defs.' Br. at 2, unnumbered note.

2.23 The Dean will review the evaluation materials and will forward these materials to the Executive Vice President/Provost together with an evaluative letter. The temporary full-time employee will also receive a copy of the letter.

*Id.* at § 2.2.

The very terms of the contract under which DeSanto worked provided that although he, as a full-time temporary faculty member, generally "ha[d] the same rights and responsibilities as tenure-track faculty," the evaluative process to which he was entitled did not include the involvement of the Senate Recontracting and Tenure Committee. Both of the letters which DeSanto seeks to introduce are from Dean Kapel in which Kapel reviews the recommendations of the Senate and Recontracting and Tenure Committee, a required step in the review process for tenure-track employees, *id.* at § 7, but not one required of the review process for full-time temporary faculty. Thus, these letters do not demonstrate, as DeSanto contends, that DeSanto was discriminated against by being deprived of certain procedural protections given to other faculty members. He was simply not entitled to these procedural protections, while Drs. Muller and McInnes were. Accordingly, Defendants' motion to preclude DeSanto from introducing Plaintiff's Exhibits 6A and 6B shall be granted.

### F. Motion to Preclude Plaintiff's Exhibit 10 and Testimony of Dr. Donald L. Gephardt

■ DeSanto seeks to introduce an eight-page report from Affirmative Action Officer Williams to University President Herman James on a discrimination complaint made by Dr. Eugene Simpson, an African American professor against the Dean of the School of Fine and Performing Arts, Dr. Gephart. Alexander Aff. at Ex. J. DeSanto also intends to call Dr. Gephart

as a witness. DeSanto contends that the report and the testimony of Dr. Gephart will demonstrate that DeSanto, a white male, was not given the same procedural safeguards as Dr. Simpson, an African-American male.

As the report states in its first paragraph, it was generated pursuant to N.J. Admin. C. § 4A:7–3.3, which addresses discrimination appeals, and provides: "The appointing authority shall issue a written determination to the appellant within forty-five days of the affirmative action representative's receipt of the complaint unless a longer period is agreed to by the complainant." *Id.* at 1. Thus, Dr. Simpson's complaint was investigated and reported on by Mr. Williams because Simpson had filed a formal grievance with the Affirmative Action Office. DeSanto, by contrast, did not file a complaint of discrimination with the University's Affirmative Action Office. Because DeSanto did not avail himself of the same administrative relief that Simpson did, the report is not relevant to show that DeSanto was denied certain procedural rights given to other faculty members.

■ Defendants also seek to preclude the testimony of Dr. Gephardt. DeSanto's contends that "Dr. Gephart will testify about his knowledge about plaintiff's efforts to obtain a tenured position at defendant Rowan and Dean Kapel's involvement in preventing plaintiff from obtaining tenure at Defendant Rowan." Gephardt, however, has submitted an affidavit which asserts:

I am surprised that my name appears on a witness list in this matter because I do not know the plaintiff, Dr. DeSanto. I do not believe that I have ever met or spoken to this individual. I have absolutely no knowledge of his alleged efforts to obtain a tenured position, and no knowledge of Dean Kapel's involvement

in preventing plaintiff from obtaining tenure at Rowan.

Gephardt Aff. at Alexander Aff., Ex. L. This sworn statement demonstrates that Gephardt has no personal knowledge of the facts about which he is being called to testify. Thus, Dr. Gephardt may not testify on these matters pursuant to Fed. R.Evid. 602. Accordingly, Defendants' motion to preclude introduction of Plaintiff's Exhibit 10 and Dr. Gephardt's testimony shall be granted.

### G. Motion to Preclude Testimony Concerning a Part Time Position as Not Relevant and Embarrassing

██ DeSanto has listed Dr. Sharon Gallinelli as a witness who will testify about "her teaching contracts and assignments with defendant Rowan, ... her efforts to obtain various position [sic] at defendant Rowan and the involvement of the staff of defendant Rowan that allowed her to obtain various position [sic] at defendant Rowan." JFPTO at 34–35. Defendants argue that Dr. Gallinelli's testimony is not relevant because the "3/4 time position" for which Dr. Gallinelli was hired rather than DeSanto is not a tenure-track position. Defendants suggest that the reason DeSanto is calling Dr. Gallinelli is to "embarrass" her with the fact that she is now married to Dr. Calliari, the Chairperson of the College of Education, by suggesting that Dr. Calliari might have exercised his influence in the hiring of Dr. Gallinelli. Defendants further argue that Dr. Gallinelli should not be called so that DeSanto may "subject[ her] to a series of questions designed to demean her credentials and qualifications." Def.'s Br. at 20.

Testimony about qualifications and credentials from a female job candidate who was selected for a position to which DeSanto applied is relevant to DeSanto's claims of sex discrimination. Also relevant is any inference of preferential treatment that may be drawn from the fact that Dr. Gallinelli is now married to the Chairperson of the College of Education, where the 3/4 position for which both Gallinelli and DeSanto applied, was located. DeSanto's counsel is forewarned that his questioning of this witness will not be allowed to embarrass or harass her, but must be confined to eliciting relevant testimony about Gallinelli's qualifications for the job for which she was selected over DeSanto. Accordingly, Defendants' motion to preclude this testimony shall be denied.

### H. Motion to Preclude "Stray Remarks"

██ Defendants seek to preclude DeSanto from introducing two so-called "stray remarks," one allegedly made by an "upper administration personnel in Rowan University," Pl.'s Br. at 24, and one allegedly made by Dr. Kapel. These "stray remarks" purportedly show that discrimination motivated the decision to deny DeSanto a tenure-track position. In support of barring the introduction of these remarks, Defendants argue that even if the remarks were made, there is no evidence that either comment was made by a person who had input into the decision to deny DeSanto tenure, or that the Selection Committee acted on the basis of these comments.

At the time that the statement was allegedly made by Dr. Kapel, he was Dean of the College of Education with supervisory authority over the College and its teaching faculty. Kapel Dep. at 63. Thus, any discriminatory "stray remark" made by Kapel would be relevant to DeSanto's claims of discrimination. Likewise, discriminatory statements made by an "upper administration personnel" might be relevant if that person were able to influence the promotion process.

It would be premature for the Court to preclude the introduction of such testimo-

ny at this point. Indeed, it is surprising that Defendants expend such energy contesting the introduction of evidence which will be introduced only through DeSanto's own testimony. It is the jury's role to decide what weight, if any, to give such uncorroborated and self-serving testimony. Furthermore, if DeSanto fails to connect the "stray remarks" to persons who could have influenced the University's promotional decisions, then the stray remarks will have no legal significance and the jury will be so instructed. Accordingly, Defendants' motion to preclude the introduction of allegedly discriminatory "stray remarks" shall be denied.

### I. Motion to Preclude Plaintiff's Exhibit 16 and Testimony of F. Jeffrey Friedlin, M.D.

■ Defendants object to the introduction of testimony from Dr. F. Jeffrey Friedlin and a letter from Dr. Friedlin summarizing DeSanto's medical conditions. Alexander Aff. at Ex. N. They argue that because Dr. Friedlen was not identified as an expert witness, he may not give an opinion as to the causation of DeSanto's medical problems. Furthermore, because DeSanto has identified no other qualified expert witness to establish a causal link between DeSanto's medical problems and the allegedly discriminatory conduct, Defendants argue that Dr. Friedlen's testimony and letter as to the fact that DeSanto suffers from gastric disorders, therefore, are not relevant to any issue in this case.

■ A treating physician does not need to be qualified as an expert, pursuant to Fed.R.Evid. 702, if he or she is only called as a fact witness, to establish diagnosis or treatment. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 159 n. 8 (3d Cir.1999). Therefore, it would be permissible for DeSanto to call Dr. Friedlin as a fact witness and to introduce the letter from Dr. Friedlin listing DeSanto's conditions. DeSanto, however, has failed to identify any qualified expert who can establish that Defendants' conduct proximately caused DeSanto's medical problems. Without such expert testimony to demonstrate the link between Defendants' conduct and DeSanto's medical condition, the mere fact of DeSanto's medical condition is not relevant, and, may not be admitted into evidence. *See Ferris v. Pennsylvania Fed'n Bhd. of Maint. of Way Employees*, 153 F.Supp.2d 736, 745 n. 5 (E.D.Pa.2001).[3] Accordingly, Defendants' motion to preclude Dr. Friedlin from testifying and to bar the introduction of Dr. Friedlin's letter shall be granted.

### J. Motions to Exclude Plaintiff's Witness, George Brent as "Unavailable" pursuant to Fed.R.Evid. 804(a)(1) and to Exclude Brent Statements as Hearsay

■ DeSanto has identified as a fact witness, Dr. George Brent, the Chairperson of the Departmental Search Committee and Chairperson of the Department of Elementary Education. Defendants seek to exclude Dr. Brent's testimony, arguing that Dr. Brent is "unavailable" due to "mental illness or infirmity," pursuant to Fed.R.Evid. 804(a)(4).[4] In support of their

---

**3.** The *Ferris* Court ruled that the fact testimony to be offered by doctor was irrelevant because: (1) that doctor was not qualified to give testimony on the causal link between plaintiff's injuries and defendants' conduct; and, (2) no other expert witness had been identified who could testify as to causation. 153 F.Supp.2d at 745 n. 5.

**4.** Rule 804 provides, in relevant part:
"Unavailability as a witness" includes situations in which the declarant—

. . . . .

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity;
Fed.R.Evid. 804(a)(4).

argument that Dr. Brent is "medically unavailable," Defendants submit two letters from H. Branch Coslett, M.D. The first letter, dated October 2, 2001, is addressed "To Whom it May Concern" and states, in pertinent part: "Dr. George Brent is under my care with a diagnosis of Dementia. With a reasonable degree of medical certainty Dr. Brent's inability to work will be permanent." Alexander Aff. at Ex. O. The second letter, dated March 8, 2002, is addressed to "Venetta Turner, Human Resources" and states, in pertinent part: "Professor George Brent continues under my care for a neurologic condition. He will be reevaluated on a regular basis with respect to his capacity to work." *Id.*

Although it appears likely that Dr. Brent is "unavailable" within the meaning of Rule 804(a)(4), the record before me is unclear as to whether the "mental illness or infirmity" from which Dr. Brent was suffering in October, 2001 and March of this year, continues to this day. The vagueness of the letters from Dr. Coslett as to the nature of Dr. Brent's impairment and the duration of that impairment create sufficient doubt to require me to conduct a hearing, pursuant to Fed.R.Evid. 104, out of the presence of the jury before Dr. Brent can be allowed to testify. At that hearing, Defendants, who bear the burden of proving that Dr. Brent is "medically unavailable," will be required to present specific testimony which demonstrates that Dr. Brent's mental impairment continues to the present time and renders him "unavailable" to testify.

■■■ Defendants also move to bar the introduction of Dr. Brent's out-of-court statements, as hearsay. Dr. Brent, however, is (or was) an employee of the University at the time he made the statements, and a faculty member who presumably exercised influence over promotion and hiring decisions. As such, his out-of-court statements are not hearsay, but are admissions of a party-opponent, pursuant to Fed. R.Evid. 801(d)(2)(D), and are thus, admissible, provided, of course, that the proponent of such testimony can meet the criteria of Rule 801(d)(2)(D).[5]

Accordingly, Defendants' motion to bar Dr. Brent's testimony shall be denied without prejudice, pending a Rule 104 hearing as to Dr. Brent's "unavailability." Defendants' motion to preclude the introduction of Dr. Brent's out-of-court statements as hearsay shall be denied.

## K. Motion to Limit Use of "Overload Contracts"

■■■ Defendants argue that DeSanto should be barred from introducing evidence of the extra teaching load that he voluntarily took on during his employment at the University. Defendants argue that this evidence relates to DeSanto's argument that he was entitled to tenure based on the number of hours he taught at the University, an argument which has already been dismissed from the case. *See* discussion *supra*, Part II.A.

Evidence that DeSanto took on extra course work is relevant not only to the tenure claim that has been dismissed, but also to DeSanto's general qualifications, and perhaps to DeSanto's argument that University representatives led him to be-

---

5. An out-of-court statement offered in evidence to prove the truth of the matter asserted is not hearsay if "[t]he statement is offered against a party and is ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the rela-

tionship, ..." Fed.R.Evid. 801(d)(2)(D); *Skaggs v. Hartford Fin. Group, Inc.,* No. Civ. A.1999CV3306, 2001 WL 1665334, at *8 (E.D.Pa. Sept. 28, 2001)(report prepared by defendant's employee about office procedures and proposed remedial measures was admissible as an admission of a party opponent).

lieve that he might be eligible for tenure if he shouldered additional work. Accordingly, DeSanto may not introduce evidence of his extra teaching load to support a claim of entitlement to tenure, but may introduce such evidence to demonstrate his general teaching credentials and dedication. Defendants' motion to bar this evidence, therefore, shall be denied.

### L. Motion to Bifurcate Trial on the Issues of "Front Pay" nd Punitive Damages

#### 1. "Front Pay"

 Defendants ask the Court to bar DeSanto from introducing evidence of "front pay" to the jury until a liability verdict is rendered. In essence, Defendants ask the Court to bifurcate the trial on this issue, pursuant to Fed.R.Civ.P. 42(b), which provides, in relevant part: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue, . . ." Fed.R.Civ.P. 42(b).

 Ordinarily, a plaintiff who prevails in an employment discrimination case is "made whole" by a backpay award coupled with an order for reinstatement. *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir.1985). Reinstatement, an equitable remedy, is the preferred means by which to avoid future lost earnings. *Id.* Reinstatement, however, may not be possible where no suitable position exists at the time of judgment, or the animosity between the parties is such that reinstatement is impracticable. *Id.* In such cases, "front pay," an award of future earnings from the time plaintiff was wrongfully discharged to the time when he can find (or found) comparable employment, is an alternate remedy. *Id.; Carter–Herman v. City of Philadelphia*, No. Civ. A. 95–4030,

1996 WL 745227, at * 2 (E.D.Pa. Dec. 23, 1996). It is the Court's responsibility to decide whether reinstatement or front pay is the appropriate remedy. *Feldman v. Philadelphia Housing Author.*, 43 F.3d 823, 831–32 (3d Cir.1994); *Carter–Herman*, 1996 WL 745227, at *2. If reinstatement is the proper remedy, the issue of front pay will not be submitted to the jury, because to award both would be to award the plaintiff a double recovery. *Feldman*, 43 F.3d at 831–32; *Carter Herman*, 1996 WL 745227, at *2. If the Court determines that "front pay" is the appropriate remedy, then the jury is charged with the task of determining the proper amount of those damages. *Maxfield*, 766 F.2d at 796.

Defendants have not provided the Court with any arguments to support their request for bifurcation. They have not indicated how allowing DeSanto to introduce evidence concerning "front pay" during the liability phase of the trial would prejudice them, nor how preventing the introduction of such evidence in the liability phase would be "conducive to expedition or economy." Indeed, I cannot perceive that Defendants would be unduly prejudiced by the introduction of evidence of the salary for tenure-track positions, nor would economy or efficiency be served by cordoning off this information, easily introduced through an exhibit, to a separate trial. Accordingly, Defendants' motion to preclude DeSanto from introducing evidence relating to "front pay" shall be denied.

#### 2. Punitive Damages

Defendants also move to preclude DeSanto "from eliciting or referring to testimony regarding punitive damages during voir dire, opening statements and the case-in-chief." Defs.' Br. at 29.

As an initial matter, in the United States District Court for the District of New Jersey, voir dire is conducted by the Court,

therefore, there is no danger that punitive damages will be referred to during voir dire. Furthermore, DeSanto's counsel has represented that he "has no intention to give defendants some toehold for appeal of a verdict in favor of plaintiff by referencing the potential availability of punitive damages in his opening statement or in questioning any witness." Pl.'s Br. at 42.

■ To grant Defendants' overlybroad request, however, could serve to preclude DeSanto from eliciting testimony that is necessary to prove his *prima facie* case of intentional discrimination. Accordingly, while DeSanto's counsel will be kept to its word that no mention of the availability of punitive damages will be made during opening statements or in the examination of any witness, I cannot grant Defendants' request to preclude DeSanto from introducing any evidence "concerning" punitive damages. If Defendants have specific objections at trial to the introduction of certain evidence or the questioning of any witness with regard to this issue, I shall entertain those objections at the appropriate time. Accordingly, Defendants' motion on this issue shall be denied.

## III. CONCLUSION

To summarize the disposition of the Defendants' motions *in limine:* (1) the motion to prohibit DeSanto from introducing evidence or testimony regarding his entitlement to or property interest in tenure shall be granted with the exceptions noted above; (2) the motion to bar DeSanto from receiving the equitable relief of a tenured position shall be granted; (3) the motion to preclude introduction of documents or testimony of Defendants' Affirmative Action Plan shall be denied; (4) the motion to preclude introduction of evidence pertaining to DeSanto's claims of discrimination based on "national origin" shall be granted; (5) the motion to preclude introduction of evidence relevant to hiring decisions

before August 20, 1997 shall be denied; (6) the motion to preclude introduction of "other acts" evidence shall be granted; (7) the motion to preclude introduction Plaintiff's Exhibit 10 shall be granted; (8) the motion to bar the testimony of Dr. Donald L. Gephardt shall be granted; (9) motion to preclude DeSanto from calling Dr. Gallinelli as a witness shall be denied; (10) the motion to preclude certain "stray remarks" shall be denied; (11) the motion to preclude the introduction of Plaintiff's Exhibit 16 and the testimony of F. Jeffrey Friedlin, M.D. shall be granted; (12) the motion to exclude Plaintiff's Witness, George Brent as "unavailable" pursuant to Fed. R.Evid. 804(a)(1) shall be denied without prejudice, pending a Rule 104 hearing at trial; (13) the motion to exclude George Brent's out-of-court statements as hearsay shall be denied; (14) the motion to limit the use of "overload contracts" shall be denied under the limitations set forth above; (15) the motion to preclude DeSanto from introducing evidence of "front pay" during the liability phase of the trial shall be denied; and, (16) the motion to bar DeSanto from eliciting evidence relevant to punitive damages during the liability phase of the trial shall be denied under the limitations set forth above.

The Court shall enter an appropriate form of Order.

## ORDER

This matter having come before the Court on the Motion in limine of Defendants, Rowan University and Dean David Kapel, David Samson, Esq., Attorney General of New Jersey, Jane A. Greenfogel, Esq., Deputy Attorney General, Linda V. Alexander, Esq., Deputy Attorney General, appearing on behalf of Defendants; Dennis K. Kuroishi, Esq., The Office of Frederic J. Gross, Esq., appearing on behalf of Plaintiff; and,

The Court having considered the submissions of the Parties; and,

For the reasons set forth in the Opinion filed concurrently with this Order;

IT IS, on this 22nd day of August, 2002, HEREBY ORDERED that:

(1) the motion to prohibit Plaintiff from introducing evidence or testimony regarding his entitlement to or property interest in tenure is GRANTED;

(2) the motion to bar Plaintiff from receiving the equitable relief of a tenured position is GRANTED;

(3) the motion to preclude introduction of documents or testimony of Defendants' Affirmative Action Plan is DENIED;

(4) the motion to preclude introduction of evidence pertaining to Plaintiff's claims of discrimination based on "national origin" is GRANTED;

(5) the motion to preclude introduction of evidence relevant to hiring decisions before August 20, 1997 is DENIED;

(6) the motion to preclude introduction of "other acts" evidence is GRANTED;

(7) the motion to preclude introduction of Plaintiff's Exhibit 10 is GRANTED;

(8) the motion to bar the testimony of Dr. Donald L. Gephardt is GRANTED;

(9) the motion to preclude Plaintiff from calling Dr. Gallinelli as a witness is DENIED;

(10) the motion to preclude certain "stray remarks" is DENIED;

(11) the motion to preclude the introduction of Plaintiff's Exhibit 16 and the testimony of F. Jeffrey Friedlin, M.D. is GRANTED;

(12) the motion to exclude Plaintiff's Witness, George Brent as "unavailable" pursuant to Fed.R.Evid. 804(a)(1) is DENIED WITHOUT PREJUDICE, pending a Rule 104 hearing at trial;

(13) the motion to exclude George Brent's out-of-court statements as hearsay is DENIED;

(14) the motion to limit the use of "overload contracts" is DENIED under the limitations set forth above;

(15) the motion to preclude Plaintiff from introducing evidence of "front pay" during the liability phase of the trial is DENIED; and,

(16) the motion to bar Plaintiff from eliciting evidence relevant to punitive damages during the liability phase of the trial is DENIED.