**George Marshall GRACE, Steven T. Lebow and Kevin P. Pilate, et al., Plaintiffs,**

v.

**CITY OF DETROIT, Defendant.**

**No. 90CV71078DT.**

United States District Court, E.D. Michigan, Southern Division.

Oct. 18, 2004.

712

John R. Runyon, Sachs Waldman, P.C., Detroit, MI, for plaintiffs.

Dara M. Chenevert, City of Detroit Law Department, Detroit, MI, for defendant.

### MEMORANDUM OPINION AND ORDER

TAYLOR, District Judge.

Before this Court are Plaintiff's objections to the Special Master's "Report to the Court Regarding Damages" [1] and Defendant's request to the Court to Adopt the Report in a class action suit against the City of Detroit by claimants who were unconstitutionally denied the right to apply for employment with the City of Detroit because of a pre-employment residency requirement. This court ordered cessation of that requirement on April 5, 1991. Plaintiff objects to the Special Master's finding of fact and conclusions of law as to only thirty-seven of over five hundred claimants given hearings by the Special Master and thereafter reported. The specific objections as to twenty-nine of the thirty-seven claimants deal with the issues of mitigation of damages and the liability cut-off date. As will be more fully explained below, the Court adopts in part, and rejects in part the Report as to these twenty-nine claimants. Plaintiff makes specific objections as to the remaining eight claimants. For the reasons explained more fully herein, the Court adopts in part, and rejects in part the Special Master's findings of fact and conclusions of law as to these eight claimants, as well.

### I.

This action was commenced on April 17, 1990 on behalf of a putative class comprised of applicants for employment with the City of Detroit who were denied hire because of the City's pre-employment residency requirement. On March 5, 1991, this Court certified this action to proceed on behalf of a class composed of applicants for employment with the City of Detroit whose applications were denied on the basis of the City's pre-employment residency requirements dating to April 17, 1987. By Memorandum Opinion and Order dated April 5, 1991, this court granted Plaintiff's Motion for Partial Summary Judgment with respect to the issue of liability and issued an injunction barring continued use of the pre-employment residency requirement.

On January 2, 1992, this Court entered a Stipulation and Order directing that representative plaintiffs take responsibility for notifying members of the class of this Court's liability determination and the steps necessary to obtain relief. On April 9, 1992, Judgment was entered by this Court for plaintiffs who had timely filed claims, with damages to be ascertained in future proceedings. On May 26, 1993, this Court entered an Order appointing George T. Roumell to serve as Special Master in this case. The Special Master was designated to issue a report and recommendation to the court regarding the following issues:

(I) Whether an individual member of the plaintiff class is entitled to relief pursuant to the court's finding of liability dated April 5, 1991; and

(II) What relief the individual is entitled to including the amount of economic damages, if any, and a recommendation regarding the individual plaintiff's entitlement to non-economic damages.

The Special Master generated reports, awarding liability or nominal damages, or denying liability, to the more than five hundred plaintiffs whose claims were adjudicated. On March 29, 2004, Special Master Roumell issued a "Special Report to the Court Regarding Damages," which outlined the legal principles he had applied in making recommendations to the Court

---

1. *Hereinafter* referred to as the "Report."

regarding the economic and non-economic damages to which members of the class were entitled.

The defendant has not filed any objections to the reports of the Special Master and seeks adoption of the reports in their entirety pursuant to Fed.R.Civ.P. 53 and 28 U.S.C. § 636(b)(2). Plaintiff seeks adoption of the Report in part and contests only the portions of the report regarding mitigation of damages ("III. Where Liability Ends" (Special Master's Special Report, pp. 5–13) and "IV. Liability Cutoff as to Grace Claimants" (Special Master's Special Report, pp. 13–22)). This memorandum: 1) adopts the Report in all respects other than those specific portions contested; and 2) sets forth the Court's findings of fact and conclusions of law as to the issue of mitigation of damages and as to the eight individual claimants to whom objections were raised.

## II.

### Standard of Review

Fed.R.Civ.P.53 sets forth the appropriate standard of review for a district court in reviewing findings of fact and conclusions of law made or recommended by a Special Master. Rule 53(g) provides as follows:

(3) *Fact Findings.* The court must decide *de novo* all objections to findings of fact made or recommended by a master unless the parties stipulate with the court's consent that:

(A) the master's findings will be reviewed for clear error, or

(B) the findings of a master appointed under Rule 53(a)(1)(A) or (C) will be final.

(4) *Legal Conclusions.* The court must decide *de novo* all objections to conclusions of law made or recommended by a master.

The parties have not stipulated to make the Special Master's factual findings final or reviewable only for clear error. Accordingly, pursuant to Rule 53(g) this Court must decide the Plaintiff's objections to the Special Master's findings of fact and conclusions of law in his Report(s) *de novo.*

## III.

### A. Mitigation

As the parties agree, the law on the issue of mitigation of damages is decided in this Circuit by three cases, *Ford Motor Company v. EEOC,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982); *United States v. City of Warren, Michigan,* 138 F.3d 1083 (6th Cir.1998); and *Rasimas v. Michigan Department of Mental Health,* 714 F.2d 614 (6th Cir.1983), *cert denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984).

This Court agrees with the Special Master's reading of *Ford Motor Company v. EEOC* and *Rasimas v. Michigan Department of Mental Health,* but takes exception to his reading of *United States v. City of Warren, Michigan,* as they apply to this case of true first impression in this Circuit.

### 1) *Ford Motor Company v. EEOC*

In *Ford,* the two female plaintiffs were allowed to apply for a position at Ford Motor Company. These plaintiffs were not hired because of what the court determined was gender discrimination. Ford Motor Company eventually made each of the female plaintiffs unconditional offers of employment for the positions originally sought, but each rejected the offer. The issue in *Ford* was, "whether an employer charged with discrimination in hiring can toll the continuing accrual of back pay liability ... simply by unconditionally offering the claimant the job previously denied or whether the employer also must offer seniority retroactive to the date of the alleged discrimination." *Ford,* 458 U.S. at 220, 102 S.Ct. 3057.

The U.S. Supreme Court held that an employer *may* toll the continuing accrual of back pay liability under Title VII by unconditionally offering a rejected applicant the job previously denied. *Id.* at 232, 102 S.Ct. 3057. The Supreme Court reasoned that, "an employer charged with unlawful discrimination *often can* toll the accrual of back pay liability by unconditionally offering the claimant the job he sought, and thereby providing him with an opportunity to minimize damages." *Id.* (Emphasis added.) The unconditional offer of employment need not be supplemented by an offer of retroactive seniority. *Id.* The court also held that, in line with making the claimant whole, "the rejection of an employer's unconditional job offer ends the accrual of potential back pay liability." *Id.* at 241, 102 S.Ct. 3057. Thus, in order for the claimant to mitigate damages, he or she must return to the employer and accept the unconditional job offer, or liability is tolled.

Plaintiffs argue that *Ford* stands for the proposition that in order to toll back pay liability, an employer *must* unconditionally offer a rejected applicant employment and that an employee never has the burden to reapply with an employer who has discriminated against him or her. Plaintiffs further argue that an offer, by the discriminatory employer, to apply or interview for a position does not satisfy this requirement.

■ The Court is not inclined to read *Ford* with such breadth. In line with the Special Master's rationale, this Court holds that the *Ford* case constitutes the Supreme Court's holding that a defendant employer *may* toll its back pay liability to Title VII plaintiffs by making an unconditional offer of employment for the job originally sought without seniority. It is not a holding, as the Plaintiff argues, that an employer *must* make such an offer to toll liability.

Moreover, the *Ford* decision is couched in an analysis of the primary purpose of Title VII, which was to end invidious employment discrimination by a preferred means of cooperation and voluntary compliance. This primary purpose was served, the Court held, by offering employer defendants the incentive of liability tolling for making such an offer—without offering seniority or back pay.

■ Accordingly, this Court adopts the Special Master's reading of *Ford* and holds that there is nothing in *Ford* which indicates that an unconditional job offer is mandatory. This Court further finds that in order to mitigate damages, a claimant must return to the employer and accept an unconditional job offer, if extended, or liability is tolled.

2) *Rasimas v. Michigan Department of Mental Health*

*Rasimas* is particularly instructive on the question of what is a "substantially equivalent" position and requirements for mitigating damages.

In *Rasimas,* plaintiff was terminated from a program supervisor position at a nursing home. *Rasimas,* 714 F.2d at 615–617. The trial court found that even though plaintiff was terminated because of sex discrimination, plaintiff failed to mitigate his damages when he refused to interview with the same employer for an activities aide position and did not interview for a position located 223 miles from his home. *Id.* The Sixth Circuit upheld the discrimination ruling but found that plaintiff's conduct did not constitute a failure to mitigate as the aide position was not substantially equivalent to the supervisory position, and the second position was an unreasonable distance from plaintiff's home. *Id.*

a) Two-pronged mitigation analysis

■ Once a claimant establishes a prima facie case and presents evidence on the

issue of damages, the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence shifts to the defendant. *Id.* at 623. The defendant must then "establish that: 1) there were substantially equivalent positions which were available; and 2) the claimant failed to use reasonable care and diligence in seeking such positions." *Id.* at 624.

### 1. Substantially Equivalent Positions

■ Before applying the bifurcated analysis for mitigation set forth in *Rasimas*, it is imperative that there be a clear understanding of the definition of "substantially equivalent positions."[2] The Court in *Rasimas* held that, "the substantial equivalent of the position from which the claimant was discriminatorily terminated must afford the claimant virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status." *Id.* at 624.

Based upon this definition, the Court held that an offer by defendant to interview for a position lower than the one which plaintiff was discriminatorily discharged was not an unconditional offer to the job formerly held, as *Ford* held would cut off back pay liability. *Id.* at 625. The aide position did not offer virtually identical promotional opportunities, compensation, job responsibilities, working conditions or status. As such, the aide position was not a substantially equivalent position

to the supervisory position from which claimant was terminated.

Thus, this Court adopts the Special Master's reading of this case and his application of the two-pronged analysis set forth within to establish whether claimants properly mitigated damages.

### 3) United States v. City of Warren

In 1998, the Sixth Circuit ruled on a case similar to the one here in *United States v. City of Warren*, 138 F.3d 1083 (6th Cir.1998). In *Warren*, a Title VII suit was brought against the City of Warren for a similar pre-application residency requirement and other employment practices which the court found unconstitutional. The Sixth Circuit found that the remaining plaintiff, a police applicant who had been rejected because of the pre-application residency requirement, mitigated his damages as he applied for and obtained a position as a Detroit Police Officer. *Id* at 1094.

■ The court found that once plaintiff found a substantially equivalent position, it would have been inequitable to mandate that he reapply to the City of Warren. The court specifically held that,

> No established authority requires Title VII claimants who have found comparable employment to reapply for positions with employers who have previously refused to hire them for discriminatory reasons. This is simply not a hoop Title VII requires claimants to jump through, and we will not be the first to require it."[3] *Id.* at 1094.

**2.** *See Ford Motor Company v. EEOC*, 458 U.S. 219, 231–232, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982)(Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to back pay if he refuses a job *substantially equivalent* to the one he was denied.)

**3.** The Special Master properly notes that remedies available under Title VII or § 1983

cases are analogous in most situations excluding reinstatement. The Third Circuit held that, "There is no distinction in the law of equitable remedies between the suits brought under Title VII and suits brought in reliance on 42 U.S.C. § 1983, or directly on the fourteenth amendment." *Gurmankin v. Costanzo*, 626 F.2d 1115 (3rd Cir.1980), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 352 (1981). The Court in *Gurmankin* reasoned that employment discrimination cases require

■ It is important to note that the court found that, per Title VII, the City of Warren's pre-application residency requirement was race discrimination and was a disparate impact violation of Title VII. The instant case is not a Title VII or race discrimination case. As such, this Court holds that *Warren* should be read narrowly and stands for the proposition that Title VII discriminatees are not required to return to the discriminatory employer to reapply for a position in order to mitigate damages once a comparable position is obtained. The Court, however, does not adopt the Special Master's recommendation that *Warren* be read as holding that once a claimant finds a substantially equivalent position to the one denied, the claimant has mitigated his or her damages and need never come back, or apply to other positions while such a position is held.[4] Such a *reading would result* in inequitable results.

## IV.

### A. Application of Precedent to Instant Case

■ In sustaining conclusions of law of the Special Master, this Court holds that none of the above-cited cases are specifically applicable to a non-Title VII, non-invidiously discriminatory, constitutional right-to-travel case as we have here.

Further, this Court adopts the Special Master's determination that the *Ford* case does not mandate job offers from Defendant. The Defendants mailed letters to claimants extending an offer to apply for positions in October 1993. These letters giving each claimant an unconditional offer to apply for positions were sufficient to

make the claimants whole. Each claimant had initially been denied the opportunity to compete for a Detroit Police Department job; each claimant was restored to this original position and given the opportunity to compete once the injunction was issued and the pre-employment residency requirement was eliminated. Accordingly, each claimant was "placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Warren,* 138 F.3d at 1097 (*citing Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–419, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). As such, an unconditional offer of application to Detroit Police Department would cut off a back pay liability award if not accepted.[5]

Additionally, *Rasimas* is inapplicable here. The claimant in *Rasimas* was discharged from a position for racially discriminatory reasons. Here, none of the claimants held positions from which they were discharged. In the instant case, therefore, all that was required from Defendant was that the claimants be restored to their previous position and given the right to compete as applicants for positions.

■ Lastly, it is imperative that the *Warren* decision be read narrowly. This Court interprets the holding in *Warren* as standing for the proposition that Title VII discriminatees are not required to reapply with the discriminatory employer. All other applicants are required to return and reapply. The distinction in *Warren* is not drawn because the plaintiff obtained police employment with another department which obviated his obligation to reapply

equitable remedies found in Title VII, no matter if they are brought under Title VII or § 1983.

**4.** See Special Master's Report p. 12.

**5.** Although the Special Master refers primarily to police claimants, the findings of fact and conclusions of law set forth by the Special Master in his Report are applicable to all claimants as to all issues other than liability cut off dates.

with the City of Warren. The *Warren* case is distinguished from the instant case on the basis that *Warren* is a Title VII case based on race discrimination. Title VII discriminatees are not required to reapply with the discriminatory employer in order to mitigate damages because of the nature of the racially invidious discrimination. Whereas here, where the discrimination was based solely on a geographical requirement and not an inherently personal trait such as race or religion, it is not unreasonable to require each claimant to return to the employer who discriminated against them.

## V.

### A. Liability Cut Off as To Grace Claimants

The Special Master was instructed to make a determination as to when liability would terminate for each of the individual claimants. The Special Master based his determination regarding liability cut off dates on the bifurcated analysis for mitigation of damages set forth in *Rasimas.* He based the determination on when substantially equivalent positions became available with the City of Detroit. Accordingly, based on the cut off dates set by the Special Master, claimants were given a substantial period of time to seek positions with the City of Detroit once they became available.

### 1) Police Claimants

 The Special Master, after a thorough review of all relevant information, made a determination that the cut off date for liability for police claimants will be *October 1, 1993.* In making this determination, the Special Master made the fol-

lowing observations: 1) although the injunction was issued by this Court on April 5, 1991, the class was large and, although non-certified letters were mailed by the Defendant, it was assumed by the Special Master that all members of the class had not learned of the injunction until some time after April 1991; 2) while there was public dissemination of the information via various media outlets, it was not a continuous news item and may have been missed by class members; 3) each claimant in this case must have completed and returned a claim form to participate in this action by April 1, 1992 [6]; 4) due to a hiring moratorium, the police department had not had an academy since August 1989 [7]; 5) the first academy class after the moratorium was February 16, 1993; 6) letters were sent out by the City some time around October 1993 inviting people to take the MLEOTC examination; and 7) even if claimants had not received letters, certainly two years after the injunction and one year after the filing of their claim, an individual should have been making inquiries into the Detroit Police Department.

Based on the aforementioned, this Court adopts the Special Master's determination of *October 1, 1993* as the cut off date for liability for police claimants.

### 2) Fire Claimants

 The Special Master used fluctuating dates in Detroit Fire Department claims because the hiring practices of the city was more sporadic and the date of the next fire class may have been later. Accordingly, this Court adopts the Special Master's determination that the cut off will be when a job became available with the

---

6. Thus, all claimants had notice of the unconstitutionality of the pre-employment residency requirement and that the hiring practice was no longer sanctioned and not in practice in the City.

7. This may have acted as a deterrent to applicants to the Detroit Police Department giving them the impression that it would have been useless to apply to a department that was not hiring.

Detroit Fire Department which may have extended until 1994.

### 3) All other claimants

■ The Court adopts the cut off date for economic damages for all other non-police claimants as the date the claim was filed, i.e. some time on or before April 1, 1992. By this date, the claimant would have knowledge that the pre-employment residency requirement had been eliminated and they could reapply for positions with the City of Detroit.

## VI.

### A. Application of Rasimas

*Rasimas* held that once a claimant establishes a prima facie case and presents evidence on the issue of damages, the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence shifts to the defendant. *Rasimas,* 714 F.2d at 623. The defendant must then "establish that: 1) there were substantially equivalent positions which were available; and 2) the claimant failed to use reasonable care and diligence in seeking such positions." *Id.* at 624.

### 1) Prong One of *Rasimas*

The Sixth Circuit in *Rasimas* held that a substantially equivalent position, "must afford the claimant virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status. . . ." *Id.* at 626. The Special Master, applying the standard set forth in *Rasimas,* determined that many aspects of the Detroit Police and Fire Departments are unique—they are the largest employer of police officers and firemen in the state, they hire more applicants each year, do not require a college degree, and the opportunity for a variety of specialties and advancement is unparalleled. The Special

Master found that although there were other departments in the area that were hiring, in order to satisfy the first prong of *Rasimas,* a claimant had to return to Detroit to reapply because the only "substantially equivalent" positions were Detroit Police and Fire Department positions.[8]

■ In order to fulfill prong one of Rasimas, defendant must establish that there were substantially equivalent positions available. The Special Master has found, and this Court adopts the position that: 1) substantially equivalent positions were not available with the Detroit Police Department until the hiring moratorium was lifted and Detroit Police Department was hiring again in 1993; and 2) that substantially equivalent positions may have been available with the Detroit Fire Department as late as 1994.

Once defendant established that there were positions available with the Detroit Police Department, it was Plaintiff's responsibility to be reasonably diligent in pursuing such positions. If they failed to reasonably pursue these positions and reapply with the City of Detroit, this Court will find that the individual claimant failed to mitigate by failing to seek such substantially equivalent positions.

### 2) Prong Two of *Rasimas*

The second requirement outlined in *Rasimas* requires that the defendant show that the claimant "failed to use reasonable care and diligence in seeking such substantially equivalent positions." *Id.* at 624. If the defendant can prove that a claimant, "failed to use reasonable care and diligence in seeking such positions," then liability is tolled. *Id.* at 624.

Based on the Special Master's position that a "substantially equivalent" position in

---

**8.** The Special Master made an identical determination regarding applicants for non-police

and fire employment based on the specialized nature of the positions.

this case is a City of Detroit position, this modifies the second prong of *Rasimas*. The only position which the claimants could have pursued that would be substantially equivalent would be positions with the City of Detroit. First of all, the constitutional violation here is one where the claimant was rejected for a geographical requirement and not something inherently personal such as race, gender or religion. Unlike cases in which there had been discrimination based on inherently personal traits and it would have been unfair to require these individuals to reapply to the discriminatory employer, there is no evidence to suggest that the City of Detroit would not welcome applications of non-Detroit residents if there had been no residency requirement. It was not, in short, a proxy for race or sex discrimination.

■ Thus, the Special Master properly concluded that in this case, for a claimant to be reasonably diligent in seeking a substantially equivalent position, he or she would therefore at some point, have to come back to the City of Detroit and reapply for a position. If that claimant applied with other departments without ever reapplying to Detroit, liability is cut off as of the specified date depending on the nature of the employment.

In *Rasimas,* plaintiff was a discharged supervisor, and not merely an applicant for a position. In *Rasimas,* the discriminatory employer's offer to interview did not amount to an unconditional offer of the job formerly held and did not restore the plaintiff to the position he was in prior to the discrimination. In the instant case, the unconditional offer to apply does restore the claimants to the position they were in prior to the unlawful discrimination. As such, the unconditional offers to apply for Detroit Police Department posi-

tions were adequate to fulfill defendant's obligation.

Further, regarding police positions, testimony that an individual received the October 1993 letter from the City offering an opportunity to apply and take the examination, but then did not respond, is evidence that the individual has not acted reasonably in their diligence in attempting to obtain a substantially similar job. However, once an individual returns to the City of Detroit to reapply, liability will continue to run until the date of rejection or hire.

### 1) Loss of Interest

■ The Special Master's findings regarding the "Loss of Interest" doctrine are affirmed in part and reversed in part. The Special Master has found that if an individual has not applied for any other police positions or come back to the Detroit Police Department after originally applying to the City of Detroit, that will be evidence that the applicant failed to mitigate damages, lost interest in being a police officer, and liability will terminate as of October 1, 1993.[9] The Special Master found that once an individual loses interest in becoming a police officer, and specifically a Detroit Police Officer, the individual admits to a failure to use reasonable diligence in mitigating his or her damages. The Court affirms the Special Master's application of the "Loss of Interest" doctrine in these circumstances.

■ The Special Master, however, has not applied this rule uniformly and makes an exception for individuals hired as police officers within other departments. The Special Master finds that these individuals have successfully mitigated their damages once they obtain alternative police employment, and their liability will not be termi-

---

**9.** While the Special Master discusses this "Loss of Interest" doctrine in relation to po-

lice officer positions, he has applied it universally for all City of Detroit positions.

nated. The Special Master reasons, based on the *Warren* case, that once a claimant finds a *comparable position* with another *police department,* there is no requirement that a claimant come back to the employer who rejected their application due to an unconstitutional practice. The Court rejects the Special Master's findings here. This Court finds, however, that all claimants are required to have reapplied with the City of Detroit for the desired positions or it will be determined that they lost interest in the positions and liability will be tolled as of the previously established date.

## VI.

■ In sum, this Court adopts all portions of the Special Master's "Report to the Court Regarding Damages" to which objections were not raised. This Court also finds as follows:

1) The Special Master's interpretation of all cases other than the *United States v. City of Warren, Michigan,* 138 F.3d 1083 (6th Cir.1998) will be adopted in its entirety;

2) The letters mailed to claimants offering them an opportunity to apply for positions were sufficient to make claimants whole and put them in the position they were in prior to the unlawful discrimination;

3) All police claimants were required to reapply with the City of Detroit for positions once the injunction was issued and claims were filed, or liability will be tolled as of October 1, 1993;

4) All fire claimants were required to reapply with the City of Detroit for positions once the injunction was issued and claims were filed, or liability will be tolled as of the date it is determined that positions became available with the Fire Department which may extend as late as 1994;

5) The cut off date for economic damages for all other claimants will be the date their claim was filed, i.e. some time on or before April 1, 1992; and

6) The "loss of interest" doctrine is adopted as to all claimants. If the claimants failed to reapply with the City of Detroit for employment after the injunction was issued and the claim was filed, liability will be determined to be cut off as of the specified date for failure to mitigate damages.

## VII.

The Plaintiff makes specific objections as to eight of the thirty-seven claimants. Plaintiff opposes factual findings and conclusions of law of the Special Master concerning the following claimants: Richard Brown, Harry Dines, Stephen Hoffman, Thomas Lessnau, May Ann Radney, Valentino Zavala, John Keck, and Harry Beall.

As stated previously, the Court must decide de novo all objections to findings of fact and conclusions of law of the Special Master unless the parties have agreed to make the factual findings final or reviewable only for clear error. *See* Fed.R.Civ.P. 53(g). The parties have not so stipulated. Therefore, this Court will review the Plaintiff's objections de novo.

### A. Richard Brown

Richard Brown ("Brown") applied for employment as a bus driver with the City of Detroit in early 1989. Brown took and passed the written, oral and physical exams. Brown was not hired because he could not establish that he was a Detroit resident. The Special Master found that the City of Detroit was liable to Brown and that liability ran from August 1, 1989, when he would have started work, until the date Brown filed a claim in this lawsuit.[10] Plaintiff argues that the Special

10. See Special Master's Sixteenth Report pp. 3–13.

Master erred when he recommended that Brown's liability be cut off as of the date of filing the claim.

After a thorough review of the record, and based on this Court's earlier findings in this Memorandum Opinion and Order, the Special Master's determination setting Brown's liability cut off date as of the date of filing his claim is affirmed. Brown had an obligation to reapply to the City of Detroit once he knew that the pre-employment residency requirement had been eliminated, which would have been on or before the date his claim was filed. Accordingly, Brown will be entitled to back pay from August 1, 1989 through the date his claim was filed, minus any mitigation through that date. Therefore, the portion of the Sixteenth Report that addresses Richard Brown's damages is affirmed.

### B. Harry Dines

Harry Dines ("Dines") is an engineer who had previously been employed with the City of Detroit from May 1953 through April 1956. At the time he left the City, Dines was employed as an Assistant Mechanical Engineer. Dines sought re-employment with the City in 1988. In the interim, Dines was employed as an engineer with the U.S. Army Tank Automotive Command. The Special Master, in his Ninth Report, found Defendant liable and awarded Dines damages for back pay in the amount of the difference between what he actually earned and what he could have earned as a Junior Mechanical Engineer for the period between July 1, 1988 and March 26, 1992, the date he filed his claim with this Court.[11]

The Plaintiff has two specific objections to the Special Master's findings. First, Plaintiff argues that Dines' damages should not have been based upon the wage rate of the entry-level position of Junior Mechanical Engineer, but instead should have been based upon a higher level position more appropriate to his experience.[12] Second, Plaintiff argues that the Special Master should not have truncated Dines' damages as of the date he filed his claim because Dines failed to reapply with the City. Plaintiff argues that this requirement is inconsistent with City of Warren, supra.

This Court adopts the portion of the Special Master's Ninth Report regarding Dines' liability cut off date and reverses the portion of the Report concerning position and rate of pay.

The Special Master properly found liability on Defendant's behalf, however, back pay should be awarded at a higher rate of pay. Dines held the position of Assistant Mechanical Engineer when he left the City of Detroit in 1956, and, it would be inappropriate to award him pay at the lower-level rate of a Junior Mechanical Engineer after he had previously held a higher position. Hence, Dines will be awarded pay at the rate of an Assistant Mechanical Engineer.

The Special Master also found that Dines' back pay award should be cut off as of the date he filed his claim in the instant action. This Court adopts the Special Master's reading of the City of Warren case in this instance which mandates that Dines reapply with the City to properly mitigate damages. Whereas Dines' failed to reapply with the City after the residency requirements were enjoined and after he filed his claim, back pay liability will terminate as of March 26, 1992. Consequently, back pay should be awarded at the rate of pay of an Assistant Mechanical

---

11. See Special Master's Ninth Report pp. 19–25.

12. Plaintiff points out that there were numerous openings with the City at the time of Dines' application, including higher level positions.

Engineer from July 1, 1988 until March 26, 1992.

## C. Stephen Hoffman

Stephen Hoffman ("Hoffman") is an accountant who was deterred from applying for employment with the City of Detroit because of its pre-employment residency requirement. In an attempt to mitigate damages, Hoffman ultimately accepted employment with Marketing Displays, Inc. The Special Master found liability and awarded Hoffman damages for lost earnings being the difference between the amount that he earned at Marketing Displays, Inc. and what he would have earned as a Junior Accountant for the City for the period from January 1, 1990 through April 30, 1991.[13] Plaintiff objects to the Special Master's limitation of accrual of damages to April 30, 1991 and argues that Hoffman did not have an obligation to reapply with the City once he had mitigated his damages by accepting employment with Marketing Display's, Inc.

This Court adopts the Special Master's finding of liability and reverses the Special Master's Sixth Report regarding Hoffman's liability cut off date.

The Special Master properly found that Hoffman was required to reapply with the City of Detroit after the injunction was issued and the pre-employment residency requirement was eliminated. As previously stated, all claimants would have had knowledge of the elimination of the requirement at some time on or before the date the claimants filed their claims. This Court therefore holds that the Special Master's cut off date of April 30, 1991 is hereby reversed and Hoffman's liability cut off date will be the date he filed his claim in the instant matter.

Accordingly, Hoffman will be awarded back pay in an amount consistent with what he would have earned as a Junior Accountant for the City of Detroit from January 1, 1990 through the date he filed his claim in the instant action, minus any interim wages which must be deducted as mitigation.

## D. Thomas James Lessnau

■ Thomas James Lessnau ("Lessnau") is a police officer who has been employed with the Westland Police Department since 1990. Lessnau attempted to apply with the City of Detroit Police Department on several occasions, but, his application was not processed because of the pre-employment residency requirement. The Special Master found that the City of Detroit was liable, but found that Lessnau was only entitled to nominal damages since he was earning more with the Westland Police Department than he would have been earning with the Defendant.[14] The Special Master also made an alternative recommendation that Lessnau be placed in the ordinance portion of the police academy and, if he passes, his appointment will include retroactive seniority and pension credits from February 16, 1993. Plaintiff requests that this Court adopt the Special Master's alternative recommendation.

This Court, after a review of the record, adopts the Special Master alternative recommendation that Lessnau be given the opportunity to attend the ordinance portion of the academy, with the understanding that, if successful, he will be awarded retroactive seniority and pension credits from February 16, 1993.

---

13. See Special Master's Sixth Report pp. 61–71.

14. See Special Master's Fourth Report, pp. 26–31 and Addendum to Fourth Report.

### E. Mary Ann Radney

Mary Ann Radney ("Radney") applied for employment with the City of Detroit while the pre-employment residency requirement was being utilized. There has been a substantial amount of confusion surrounding the actual date of application. Radney maintains that she applied for employment with the City in 1981. Defendant argues, and the Special Master found, that Radney applied for employment with the City in 1987. Accordingly, the Special Master denied any economic relief based on the fact that Radney had obtained a position with the U.S. Department of Justice and was earning a greater salary in 1987 than she would have been earning at the City. The Special Master awarded Radney nominal damages because she was a qualified applicant who was rejected on the basis of residency.[15]

The Plaintiff objects to the Special Master's findings and asks the Court to find that Radney applied in 1981 and award economic damages.

This Court finds, based on the record and contrary to the Special Master's findings of fact, that Radney applied for employment with the City of Detroit in 1981. Based on the aforementioned, this Court holds that: 1) the Special Master's finding regarding Radney is reversed; and 2) Radney is entitled to economic damages from the date of the unlawful rejection of employment through the date on which she was earning more at the U.S. Department of Justice minus any interim wages which must be deducted as mitigation.[16]

### F. Valentino Zavala

Valentino Zavala ("Zavala") is a police officer who has been employed with the City of Wyandotte since December 1, 1986. In November 1984, Zavala submitted an application for employment with Defendant. Zavala successfully completed the written, physical and psychological examinations. In December 1985, Zavala was informed that he would have to acquire residency within the City of Detroit in order to be considered for employment. In a letter dated September 24, 1986, Zavala received a letter indicating that he was rejected because of his residency.

The Special Master found the Defendant liable to Zavala. He also found that the claimant would have been placed in the February 3, 1986 academy class in the absence of the residency requirement. The Special Master then determined that liability existed as of February 3, 1986, the date claimant would have been hired as a police officer. The Special Master also recommended that Zavala be awarded the difference in pay between what Zavala had been earning through employment and what he would have received as a Detroit Police Department officer. The Special Master also indicated that from the point at which Zavala became employed with the Wyandotte Police Department, Zavala is entitled to nominal damages as he earned more as a Wyandotte police officer than he would have earned employed as a Detroit police officer.[17]

---

15. See Special Master's Twenty–First Report pp. 90–125.

16. It is important to note that while the statutory period for tort actions in Michigan is three years, the Special Master in his "Special Report to the Court on the Application of the Statute of Limitations to Claims Filed Pursuant to Class Actions" opined that as long as some members of the class express claims within the statutory period, other claims that extend back in time from the statutory period, here April 17, 1987 to April 17, 1990, are not stale, due to a continuing violation because of a concerted policy by the City to deny applications to non-residents.

17. See Addendum to the Eighth Report of the Special Master pp. 12–16.

This Court holds that liability will extend from February 3, 1986 through October 1, 1993 (liability cut off date for police claimants who failed to reapply with the City). It further holds that Zavala is entitled to economic damages in an amount equal to what he would have made as a Detroit police officer during said period less the amount he earned in other employment, including that of a Wyandotte police officer. From the point at which Zavala began earning more than he would have with the Detroit Police Department, Zavala is only entitled to nominal damages.

### G. John Keck

John Keck ("Keck") applied for a position with the Detroit Police Department on March 15, 1988. He was rejected because of the pre-employment residency requirement. Keck became a police officer with the River Rouge Police Department in October 1988. Although his application was initially rejected because of the residency requirement, the Defendant processed his application in 1994 after the requirement was found to be unconstitutional. On June 12, 1995, Defendant offered Keck a position in the Detroit Police Academy. Keck rejected the offer.

The Special Master found the Defendant liable and determined that Keck had mitigated his damages by becoming a police officer with River Rouge. However, he found that liability would be cut off as of June 12, 1995 when the City offered Keck a position in the Academy. The Special Master determined that the offer to attend the Academy was an unconditional offer of employment.[18]

This Court affirms the Special Master's finding of liability as to claimant Keck, but, reverses the liability cut off date.

While the Special Master correctly determined that an offer of a position in the

police academy would, under these circumstances be sufficient to restore Keck to his position prior to the unlawful discrimination, it is unnecessary to reach the merits of this argument. This Court has determined that police claimants, as well as all other claimants, had a duty to reapply with the City of Detroit by a specified time in order to have properly mitigated damages. This Court does not find, as the Special Master recommended, that police claimants were found to have mitigated damages if they obtained "comparable employment" as police officers with other agencies and did not have a duty to reapply with the City of Detroit. This Court does not draw this distinction for police claimants. The *City of Warren* case, as stated previously, must be read narrowly. This Court interprets the holding in *Warren* as standing for the proposition that Title VII discriminatees are not required to reapply with the discriminatory employer. Title VII discriminatees are not required to reapply with the discriminatory employer in order to mitigate damages because of the racial nature of the invidious discrimination. All other applicants are required to return and reapply. Therefore, this Court finds that claimant Keck had an obligation to reapply for a position with the Detroit Police Department on or before October 1, 1993 in order to mitigate damages. By that point Keck would have already filed a claim in this action, he would have been aware that the pre-employment residency requirement was no longer being implemented, and would have known that academy classes were being offered.

Keck failed to reapply with the City of Detroit for employment. Accordingly, this Court reverses the portion of the Addendum to the Special Master's Eleventh Report that grants Keck damages through

---

**18.** See Addendum to Eleventh Report of the Special Master pp. 7–13.

June 12, 1995, and instead grants Keck damages from the date of unlawful rejection of employment until October 1, 1993, minus any interim wages which must be deducted as mitigation.

## H. Harry Beall

Harry Beall ("Beall") was employed as a fire fighter with the Detroit Fire Department ("DFD") from 1977–1986. Beall voluntarily resigned from his position with the DFD in March 1986 to pursue a new career. In his notice of resignation Beall listed a Grosse Pointe Park address. A few months later, Beall changed his mind about the career change and decided to seek reinstatement with the DFD: It is at this point that the facts become unclear. On the resignation form filled out by claimant, the Deputy Chief indicated that the DFD would rehire claimant in the future. However, on an evaluation form concerning Beall's reapplication it was reported that Beall received satisfactory marks in most categories, however, it was marked "no" in the box concerning whether claimant should be reinstated. The only explanatory note stated, "The employee resigned and moved to a Grosse Pointe Park address." Additionally, a departmental evaluation completed two days after Beall resigned was checked, "reinstatement not recommended." Seven months after Beall submitted his application, he received a notice that his application was rejected based on a "Departmental Recommendation."

The Special Master, after several hearings, denied liability on Beall's claim finding that the City rejected claimants reapplication for employment with the DFD on the basis of a departmental recommendation and that claimant's constitutional rights were not violated.

Plaintiff objects to the Special Master's findings concerning Beall and argues that claimant was denied employment based on his residency and that claimant's constitutional rights were violated as a result of the City's practices. Further, Plaintiff asks that this Court decline to adopt the Special Master's Twenty–Third Report as it applies to Beall and find the City liable on Beall's claim for damages.

After a thorough review of the record and both parties arguments, this Court finds that the City is liable to claimant. Plaintiff is correct in its assertion that Beall was denied reinstatement because of his residency. Although Claimant was given primarily all satisfactory ratings, the City declined to reinstate him. In addition, various testimony indicates that Beall was denied reinstatement because of his residency. Also, the resignation form stated that the DFD would rehire claimant in the future. Further, a letter sent by the City of Detroit personnel office indicated that the negative recommendation claimant had been given would have been reconsidered if he was a Detroit resident. Therefore, it is clear to this Court that Beall was denied reinstatement based solely on his residency.

This Court also finds that claimant's constitutional rights were violated and Beall was damaged because of this violation. Beall's constitutional right to travel was infringed upon. Claimant moved to Grosse Pointe Park upon resignation, sought reinstatement with the DFD, and was denied because of the pre-employment residency requirement. The United States Supreme Court has made clear that the constitutional right to travel prohibits a government from punishing people for their previous residency. *See Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Here, Beall had recently exercised his right to travel by moving to Grosse Pointe Park, and was penalized for exercising this right. The denial of Beall's application for reinstate-

ment, based on his residency, was an unconstitutional violation of Beall's constitutional right to travel.

Therefore, this Court declines to adopt the portion of the Special Master's Twenty–Third Report concerning claimant Beall and finds that the Defendant is liable for economic damages to claimant. His economic damages will be equal to back pay from the day after he submitted his application for reinstatement, when the City asked for verification of residence, through the date his claim was filed [19], minus any mitigation. No non-economic damages shown of record, accordingly, non-economic damages are denied.

**IT IS SO ORDERED.**

19. The cut off date is set as of this date based on claimant Beall's failure to reapply for a position once the residency requirement was enjoined, as the Special Master has required.